J. B. ELMORE v. THE STATE.

No. 16686. Delivered May 23, 1934.
State's Motion for Rehearing Denied June 20, 1934.

 . 

The opinion states the case.

*Davis & Davis,* of Haskill, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin for the State.

CHRISTIAN, JUDGE.—The offense is wife desertion; the punishment, confinement in the penitentiary for 18 months.

It was alleged in the indictment that the offense was committed on or about December 21, 1933. The indictment was returned into court and filed on June 6, 1933, which was more than six months before the offense was averred to have been committed. The sixth requisite of an indictment under the provisions of article 396, C. C. P., is that "the time mentioned must be some date anterior to the presentment of the indictment, and not so remote that the prosecution of the offense is barred by limitation." The defect is fatal. Eshon v. State, 48 S. W. (2d) 631, and authorities cited.

The judgment is reversed and the prosecution ordered dismissed.

*Reversed and Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The State having perfected the record by the filling of a corrected indictment, the appeal will be considered on its merits.

The prosecutrix, Levada Elmore, and the appellant, J. B. Elmore, were married on the 21st day of December, 1932. The parties resided in Texas but the ceremony took place in Oklahoma, where the parties mentioned went in company with rela-

tives of the prosecutrix. Immediately after the marriage they returned to their respective homes to live. There is evidence that the prosecutrix gave birth to a child on the 12th day of March following the marriage in December. However, there is no evidence that appellant was the father of the child. From the testimony of the prosecutrix, it is shown that both before and at the time of the marriage she was living with her mother upon a farm in Haskell County and that the appellant was living with his father on a farm in the same county. Appellant was a youth about eighteen years of age and was attending school. At the time of the marriage and since that time, the prosecutrix lived with her mother, had no property, and had no means of support other than such as she might earn by labor. At the time of the marriage the appellant had about two dollars and the prosecutrix had about the same amount. From the testimony of the prosecutrix it is also shown that at the time of the marriage it was agreed that appellant should finish his school before they lived together. From her testimony we quote: "The understanding was that we were to get married but were not to live together till he finished school; that was this year; school didn't close until sometimes in the spring of 1933."

The testimony of the prosecutrix touching cohabitation is somewhat confusing. The only evidence indicating that the parties lived together as man and wife is the statement as follows: "The night that we returned from Oklahoma on the truck, we lived together as man and wife after we were married; that was after we left Oklahoma and before we reached Munday."

However, her testimony is to the effect that the appellant had never, at any time, spent any night with her. At the time of the marriage several of the relatives of the prosecutrix accompanied her and appellant, all of them, as we understand the record, riding in the truck. From her testimony we quote further: "J. B. has never been back and spent the night or a day with me since we got back to Munday from Oklahoma. * * * My understanding of the arrangement was that we were not to live together until he had finished high school and he had not finished school on or about the 21st day of December, 1932."

Appellant remained in school until March, 1933. He was nineteen years of age at that time. He had tried to get a job. He was living with his father who had a number of children. The prosecutrix had also tried to get work and obtained some work on a farm.

There are several bills of exception in the record. However, our view of the evidence renders a discussion of the bills unnecessary.

The evidence is definite to the point that there was a prenuptial agreement or contract. Such contracts are recognized as permissible and binding when properly made. See Cyc. of Law and Proc., vol. 1, p. 320. The effect of such agreements touching property rights rests upon statutory enactments in this state. See Revised Statutes, 1925, art. 4610; Texas Jur., vol. 23, p. 24. From the uncontroverted evidence, the contract in the present instance was specific in its terms, and no wilful breach of it upon the part of the appellant is shown by the evidence. The legal effect of such agreement, as it relates to a criminal prosecution, is a matter upon which we are unable to express an opinion further than to declare that the facts developed do not impress us to be such as justify the conclusion that the appellant was shown to be guilty of the offense with which he is charged.

Article 602, P. C., 1925, as amended by Chapter 276, Acts of 42nd Legislature, regular session, reads as follows: "Any husband who shall wilfully desert, neglect, or refuse to provide for the support and maintenance of his wife who may be in necessitous circumstances * * * shall be confined in the penitentiary for not more than two years, or be confined in jail for not more than six months, or fined not less than Twenty-five ($25.00) Dollars nor more than Five Hundred ($500.00) Dollars, or be punished by both such fine and imprisonment in jail."

The term "wilful," as it has often been interpreted in the criminal statutes, means, "with evil intent, or legal malice, or without reasonable ground for believing the act to be lawful." See Thomas v. State, 14 Texas App., 200.

In the case of Trice v. State, 17 Texas App., 43, it was said: "When the word wilful is used in a penal statute to characterize the forbidden act, it means evil intent or legal malice, or without reasonable ground to believe the act to be lawful; and the court charging a jury upon a case involving this question, should, as an essential part of the law of the case, instruct the jury in the legal meaning of the term wilful." See Townsend v. State, 51 S. W. (2d) 696, and numerous citations therein affirming the definitions quoted.

Deeming the evidence insufficient to support the conviction, the State's motion for rehearing is overruled, the judgment reversed and the cause remanded.

*Reversed and remanded.*