The STATE of Texas, Appellant,

v.

Patricia Ann HALL, Appellee.

No. 1096–90.

Court of Criminal Appeals of Texas, En Banc.

March 25, 1992.

Rehearing Denied May 6, 1992.

Michael Ramsey, Colin B. Amann, Houston, for appellee.

John B. Holmes, Jr., Dist. Atty., and Alan Curry and Denise Dryer, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellee, Patricia Ann Hall, was charged by information with two counts of criminally negligent homicide, a Class A misdemeanor. See Tex.Penal Code § 19.07. The trial court dismissed the information on the ground the prosecution was barred by the two-year statute of limitations, and the First Court of Appeals affirmed the dismissal. *State v. Hall,* 794 S.W.2d 916 (Tex. App.—Houston [1st Dist.] 1990). We granted the State's petition for discretionary review, pursuant to Rule 200(c)(4) of the Texas Rules of Appellate Procedure, to determine whether the statute of limitations was tolled so as to enable the prosecution to go forward. Having determined that the statute of limitations was not tolled, we will affirm the judgment of the court of appeals.

We first briefly review the procedural history of this cause. On November 15, 1985, the Harris County grand jury returned two indictments, which were presented in the 228th District Court of that county and which alleged that appellee committed the criminally negligent homicide of two persons. The two indictments were worded identically—except for the names of the victims—and alleged that

in Harris County, Texas, Patricia Ann Hall, hereafter styled the Defendant, ... on or about June 27, 1985, did ... unlawfully, intentionally and knowingly operate a motor vehicle on a public highway, in her official capacity as a Harris County Sheriff's Office Deputy, [and] did ... negligently cause her official police vehicle to collide with a vehicle occupied by [the victims], and by the Defendant's criminal negligence, did cause the death

of the [victims], namely, by operating her official police vehicle at a greater rate of speed than was reasonable and prudent under the existing conditions, and by failing to maintain a proper lookout for the vehicle occupied by the [victims] and the Defendant was not responding to an emergency call.

Appellee, relying on articles 4.05 and 4.07 [1] of the Texas Code of Criminal Procedure,[2] filed a pretrial motion to dismiss the indictments, arguing that the district court

> lacks jurisdiction to hear this case of negligent homicide. Negligent homicide is a misdemeanor and it is the County Court which maintains exclusive jurisdiction of misdemeanors, with the exception of those misdemeanors which involve official misconduct. The State has failed to allege any facts giving rise to the charge [of] official misconduct which would thereby give [the district court] jurisdiction. The mere fact that the indictment charges the words, "while in her official capacity," and "operating her official police vehicle," are wholly insufficient as a matter of law to constitute an allegation of official misconduct.

Appellee's motion to dismiss was denied, and the jury subsequently found her guilty as charged.

Appellee raised the jurisdictional issue again on appeal, and the Fourteenth Court of Appeals reversed her conviction on that basis. *Hall v. State*, 736 S.W.2d 818 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). Relying in part on *Robinson v. State*, 470 S.W.2d 697 (Tex.Cr.App.1971), the court of appeals held that the indict-

ments did not allege misdemeanors involving official misconduct. The court of appeals explained that a criminal act involves "official misconduct," for district court jurisdiction purposes, only if that criminal act is "inextricably a function of the official duties of the defendant." *Hall*, 736 S.W.2d at 821. The court of appeals went on to state that it did "not consider operating a motor vehicle an inextricable function of a police officer's official duties." *Id.* The court also cautioned the State that "[n]ot every offense committed by a public official involves official misconduct," *id.* at 820, and that "official misconduct is an offense which cannot be committed by an ordinary citizen," *id.* at 822.

Despite the holding of the Fourteenth Court, the State did not abandon the prosecution. On August 23, 1989, an assistant district attorney of Harris County filed an information in County Criminal Court at Law Number 10 of that county, charging appellee with the same two counts of criminally negligent homicide. Appellee then filed a motion to dismiss on the basis of the two-year statute of limitations for misdemeanor prosecutions. See Tex.Code Crim. Proc. art. 12.02. The county court granted appellee's motion to dismiss, and the State appealed, arguing that the statute of limitations, Article 12.05,[3] was tolled when the initial indictments were presented in the 228th District Court. The First Court of Appeals, relying principally on *Ex parte Ward*, 560 S.W.2d 660 (Tex.Cr.App.1978), disagreed with the State and held that the statute of limitations was not tolled under

---

**1.** Article 4.05 provides:
   District courts and criminal district courts shall have original jurisdiction in criminal cases of the grade of felony, of all misdemeanors involving official misconduct, and of misdemeanor cases transferred to the district court under Article 4.17 of this code.
   In 1985, Article 4.07 provided:
   The county courts shall have original jurisdiction of all misdemeanors of which exclusive original jurisdiction is not given to the justice court, and when the fine to be imposed shall exceed two hundred dollars.

**2.** Unless otherwise noted, all articles cited in this opinion are in the Texas Code of Criminal Procedure.

**3.** Article 12.05 provides in relevant part:
   (b) The time during the pendency of an indictment, information, or complaint shall not be computed in the period of limitation.
   (c) The term "during the pendency," as used herein, means that period of time beginning with the day the indictment, information, or complaint *is filed in a court of competent jurisdiction*, and ending with the day such accusation is, by an order of a trial court having jurisdiction thereof, determined to be invalid for any reason.
   (Emphasis added.)

Article 12.05 because the original indictments "were not filed in a court of competent jurisdiction." *State v. Hall,* 794 S.W.2d 916, 919 (Tex.App.—Houston [1st Dist.] 1990).

Before this Court, the State reasserts its claim that the statute of limitations was tolled upon the presentment of the original indictments in the district court, which, the State argues, was a "court of competent jurisdiction." The State argues first that the district court was a court of competent jurisdiction because Article 4.05 grants district courts jurisdiction of all misdemeanors involving official misconduct and "the [original] indictments [in this case] alleged misdemeanors involving official misconduct." The State, citing *Studer v. State,* 799 S.W.2d 263 (Tex.Cr.App.1990), argues second that the district court was a court of competent jurisdiction because, under Article V, § 12(b), of the Texas Constitution, the presentment of an indictment to a court invests that court with jurisdiction *to try the case.*[4]

Appellee argues in response that the statute of limitations was not tolled upon presentment of the original indictments to the district court. Appellee contends, as she did below, that the district court was not a court of competent jurisdiction because the original indictments did not allege misdemeanors involving official misconduct. Appellee does not respond to the State's constitutional argument.

■ We turn first to the State's argument that the district court was a court of competent jurisdiction because the indictments presented therein alleged misdemeanors involving official misconduct. We held in *Ex parte Ward,* 560 S.W.2d 660 (Tex.Cr.App.1978), that, for the purposes of Article 12.05, a court of competent jurisdiction is a court with jurisdiction *to try the case.* Since that interpretation has not been legislatively overruled in the many years following *Ward,* we are confident that it is correct. See *Lockhart v. State,* 150 Tex.Crim. 230, 200 S.W.2d 164, 167–168 (1947) (prolonged legislative silence following judicial interpretation of statute implies approval of interpretation). Under *Ward* and Article 4.05, then, the district court was a court of competent jurisdiction only if the indictments alleged misdemeanors involving official misconduct.

■ Twice in recent years we have had occasion to discuss the meaning of the phrase, "official misconduct," as used in Article 4.05. In *Robinson v. State,* 470 S.W.2d 697, 699 (Tex.Cr.App.1971), we held that official misconduct, for the purposes of that article, was defined in Tex.Rev.Civ. Stat. art. 5973.[5] Article 5973, still in effect at the time of appellee's trial in 1985, defined "official misconduct" as

> any unlawful behavior *in relation to the duties of his office, wilful in its character,* of any officer intrusted in any manner with the administration of justice, or the execution of the law; and includes any wilful[6] or corrupt failure, refusal or neglect of an officer to perform any duty enjoined on him by law.

(Footnote and emphasis added.) Although this statutory definition includes the term,

4. Texas Constitution art. V, § 12(b), provides: An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments and informations, including their contents, amendments, sufficiency, and requisites, are as provided by law. *The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.* (Emphasis added.)

5. Article 5973 was repealed in 1987 and recodified as Tex.Loc.Gov't Code §§ 21.002(b)(2) and

87.011(3). These new statutes substitute "intentional" for "wilful." See generally *State v. Williams,* 780 S.W.2d 891 (Tex.App.—San Antonio 1989, no pet.).

6. Conduct is "wilful" if it is *intentional,* as distinguished from negligent, *and* if it is done *in bad faith or without reasonable ground for believing it to be lawful. Brown v. State,* 167 Tex.Crim. 621, 322 S.W.2d 626, 627–628 (1959); *Rankin v. State,* 139 Tex.Crim. 247, 139 S.W.2d 811, 812 (1940); *Elmore v. State,* 126 Tex.Crim. 519, 73 S.W.2d 107, 108 (1934); see also R. Perkins & R. Boyce, *Criminal Law* 875 (3rd ed. 1982).

"wilful neglect," we do not construe that term to include *negligence.* Rather, "wilful neglect" refers to "the intentional disregard of a plain or manifest duty." *Black's Law Dictionary* 1600 (6th ed. 1991).

More recently, in *Gallagher v. State,* 690 S.W.2d 587 (Tex.Cr.App.1985), we again discussed, at considerable length, the meaning of official misconduct within the context of Article 4.05 and again concluded that for a criminal act to constitute official misconduct, it must be both wilful and related to the duties of the defendant's office. See also *Emerson v. State,* 727 S.W.2d 267 (Tex.Cr.App.1987). And, again, because our holdings in *Robinson* and *Gallagher* have not been legislatively overturned, although many years have passed, we are confident that they are correct.

■ Given the established legal definition of "official misconduct," it is apparent that the original indictments in this case did not allege misdemeanors involving official misconduct. The indictments alleged neither "wilful" misconduct nor misconduct "related to the duties" of appellee's office. We thus conclude that the district court wherein the original indictments against appellee were presented was not a court of competent jurisdiction under Article 4.05. Compare *Ex parte Slavin,* 554 S.W.2d 691 (Tex.Cr.App.1977) (invalid indictment tolled statute of limitations, but trial court there had subject matter jurisdiction of offense charged).

We turn next to the State's contention that the district court was a court of competent jurisdiction by virtue of the last sentence in Tex. Const. art. V, § 12(b). Although the language cited by the State is apparently sweeping, we recognized in *Studer* that the original understanding of this language was that it would only overrule "the line of cases [from this Court] holding that a fundamental error in a charging instrument deprives the [trial] court of jurisdiction of the case." *Studer,* 799 S.W.2d

at 269 (quoting Texas Legislative Council report). We went on to note that the extensive legislative history showed that "the perceived evil [the Texas Legislature was] correcting was the raising of indictment defects for the first time after a trial and conviction and the subsequent reversal of that conviction because of that defect." *Id.* at 270–271. There is nothing in the legislative history of Article V, § 12(b), suggesting that it was believed that that article would automatically vest subject matter jurisdiction in *any* court in which an indictment was presented, thereby effectively abrogating Chapter 4 of the Texas Code of Criminal Procedure.[7] As a member of this Court recently observed,

> a literal reading of article V, § 12(b) could lead to absurd results. If the mere presentment of an indictment could vest jurisdiction in any court, then … a capital murder case could be properly tried in a county court. I cannot believe that such a result was the legislature's or the voters' intent.

*DeDonato v. State,* 819 S.W.2d 164, 168 (Tex.Cr.App.1991) (Maloney, J., concurring). We conclude, therefore, that the district court wherein the original indictments against appellee were presented was not a court of competent jurisdiction by way of Article V, § 12(b).[8]

Having determined that the district court was not a court of competent jurisdiction, we hold that the statute of limitations was not tolled. The judgment of the court of appeals is therefore AFFIRMED.

MILLER, J., concurs in the result.

CLINTON, Judge, concurring.

In the first decision giving rise to this contretemps, *Hall v. State,* 736 S.W.2d 818 (Tex.App.—Houston [14th] 1987), PDR refused, the appellate court determined that the district court lacked jurisdiction over two pending indictments alleging essential-

---

**7.** Chapter four delineates the criminal subject matter jurisdiction of Texas courts.

**8.** Also worth noting is the fact that, unlike the defendant in *Studer,* appellee lodged a com-

plaint regarding the indictment in the trial court. Thus, there was no waiver of a substance defect under Article 1.14(b), as there was in *Studer.*

ly criminally negligent homicide proscribed by V.T.C.A. Penal Code, § 19.07, pursuant to Article 21.15 V.A.C.C.P. In its opinion in the instant cause another appellate court applied the "law of the case" doctrine to adopt that prior holding, *viz:* "that the two indictments purporting to charge appellee with criminally negligent homicide *involving official misconduct,* did not confer jurisdiction on the district court." *State v. Hall,* 794 S.W.2d 916, at 918 (Tex.App.—Houston [1st] 1990).[1] In my judgment both courts are basically right, albeit they looked primarily to the definition of "official misconduct" pertaining to removal proceedings involving county officers without taking into consideration "official misconduct" as delineated in V.T.C.A. Penal Code, § 39.01, and for other matters about to be developed.

While there continues to be "a close relationship between 'removal official misconduct' and 'criminal official misconduct,'" *Talamantez v. State,* 829 S.W.2d 174 (Tex. Cr.App., delivered this day), my underlying thesis is that with enactment of the Penal Code in 1973, effective January 1, 1974, the Legislature made a rather clean break with past formulations when in V.T.C.A. Penal Code, § 39.01 it created a single offense of "criminal official misconduct," and thus provided new meaning to the terms "all misdemeanors involving official misconduct" as used in Article V, former § 8, and Article 4.05, V.A.C.C.P. (jurisdiction of district court), and "official misconduct" as used in Article V, § 24 (removal of county officers).

Having lately experienced arbitrary governance approaching tyranny, apparently the Framers deemed meaning of the term "official misconduct" so commonly understood that they felt no need to define it in §§ 4 and 24, or elsewhere in the Constitution. See *Gallagher v. State,* 690 S.W.2d 587, at 592 (Tex.Cr.App.1985); also *id.* at 595 (dissenting opinion), and *Emerson v. State,* 727 S.W.2d 267 (Tex.Cr.App.1987) (dissenting opinion at 269 ff).

Thereafter revisers included in revised *civil* statutes of 1879 the definition of "of-

ficial misconduct" applicable in civil removal proceedings involving *county officers* only; that definition and other provisions for removal proceedings were carried forward in every revision of civil statutes and are now found in V.T.C.A. Local Government Code, Title 3, Chapter 87, Subchapters B & C, § 87.011 ff. *Talamantez v. State,* supra.

Meanwhile the Legislature was proscribing certain conduct in penal codes, so that contemporaneous with civil statutes authorizing removal of county officers there were numerous criminal statutes which applied to violations of specifically prescribed duties and functions of particular state and county officers of government. This sort of statutory hodgepodge continued to challenge the bench and bar until 1974. See, e.g., cases discussed and cited in *Talamantez v. State,* supra; *Gallagher v. State,* supra; *Emerson v. State,* supra (dissenting opinion).

In 1973 the Legislature confronted its jumbled creations headon in an evident effort to resolve recurring problems manifested through litigation. Knowledgeable commentators close to its endeavors explained the changes and consequences in § 39.01. Official Misconduct, *viz:*

"This section replaces a large number of Texas statutes, most of which applied to violations of specific duties by specified public servants, e.g., Penal Code arts. 87 (misapplication of public money), 416 (neglect in drawing juries), 397 (commissioner failing to attend court), 422 (officer refusing to give data). It proscribes generally misfeasance and nonfeasance in public office, but only when the public servant intends to benefit himself or harm another, and it provides a uniform mens rea requirement and penalty structure.

\*   \*   \*   \*   \*   \*

This sections broadens the coverage of prior law to embrace the comprehensive category of public servant, which includes, in addition to officers *and em-*

---

1. All emphasis here and throughout this opinion is mine unless otherwise indicated.

*ployees of government,* [others identified in V.T.C.A. Penal Code, § 1.07(a)(30)].

The five subdivisions of this section describe the different ways in which the offense may be committed. The public servant is responsible for unauthorized exercise of his power, acts beyond his power, failure to perform a mandatory duty, violation of law relating to his office, and theft of public property under his control."

Practice Commentary.[2]

Because § 39.01 specifically defined those acts constituting "criminal official misconduct" by *public servants,* for the bench and bar to continue to resort to a definition of "removal official misconduct" on the part of *county officers* would appear to be contrary to expressed legislative intent.

On or about June 27, 1985, when she allegedly committed criminally negligent homicide, appellant was a deputy sheriff, at best a "public servant," rather than a "county officer" within the meaning of then effective Article 5973. See former article 5970, R.C.S.1925, namely:

"All district and county attorneys, county judges, commissioners, clerk of the district and county courts and single clerks in counties where one clerk discharges the duties of district and county clerk, county treasurer, sheriff, county surveyor, assessor, collector, constable, cattle and hide inspector, justice of the peace and all county officers now or hereafter existing by authority either of the Constitution or laws, may be removed from office by the judge of the district court for ... official misconduct[.]"

Notice that each named officer occupies an *elected* office. See now a similar enumer-ation of offices in V.T.C.A. Local Government Code, § 87.012.

Furthermore, by then former § 39.01 had been reduced to simpler terms, *viz:*

"(a) A public servant commits an offense if, with intent to obtain a benefit or with intent to harm another, he intentionally or knowingly:

(1) violates a law relating to his office or employment; or

(2) misapplies any thing of value belonging to the government that has come into his custody or possession by virtue of his office or employment.

(b) An offense under Subsection (a)(1) of this section is a Class A misdemeanor.

(c) An offense under Subsection (a)(2) is [a class of misdemeanor or degree of felony according to 'the value of the use of the thing misapplied']."

The criminally negligent conduct appellant allegedly engaged in may not be converted to "official misconduct" under § 39.01 by the further allegations that she operated a motor vehicle "in her official capacity as a Harris County Sheriff's Office Deputy" and then describing it as "negligently" operating "her official police vehicle" while she "was not responding to an emergency call." See majority opinion, at 1. The requisite specific intent "to obtain a benefit or ... to harm another," is not alleged, nor do the acts that are alleged "violate[ ] a law relating to [her] office or employment," or tend to show she "misapplie[d] any thing of value belonging to the government[.]"

For those reasons then I agree with the courts of appeals "that the two indictments purporting to charge appellee with criminally negligent homicide involving official misconduct, did not confer jurisdiction on the district court." Similarly, I also agree

---

**2.** In § 39.02, the Legislature also created the offense of "official oppression," one not contained in prior law. There were, however, specific penal statutes prohibiting certain oppressive activities, mostly relating to law enforcement. This section replaces "these ad hoc statutes with a general offense of official oppression that applies to all public servants." Practice Commentary.

This Court has determined that "official oppression" is "within the ambit of the phrase 'official misconduct' as that term is used in Article V, [former] § 8 of the Texas Constitution and Article 4.05, V.A.C.C.P.," meaning that it is "a misdemeanor involving official misconduct" over which a district court has jurisdiction. *Gallagher* and *Emerson,* both supra. We are not concerned here with such an offense, and thus do not address that jurisdictional matter.

with the majority here that the district court was not a court of competent jurisdiction under Article V, § 8 and Article 4.05, and for the reasons given by the majority I further agree that it was not under Article V, § 12(b).[3]

Accordingly, I concur in the judgment of the Court.

McCORMICK, P.J., joins.

**3.** Demonstrated once again that not every broad statement of law is always inclusive nor free of ambiguity. That "presentment of [a charging instrument] invests the court with jurisdiction of *the cause*," *id.,* § 12(b), overlooks a basic proposition in our jurisprudence, and other common law jurisdictions: jurisdiction of a trial court depends on other elements as well, *viz:* general, personal, subject matter, and power to enter the particular judgment. *Garcia v. Dial,* 596 S.W.2d 524, at 527–528 (Tex.Cr.App.1980); *Hultin v. State,* 171 Tex.Cr.R. 425, 351 S.W.2d 248, at 255 (1961); *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, at 644–645 (1933); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, at 1069 (1926).