NO.
12-06-00111-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

CODY WILL
CRAIG,           §                      APPEAL FROM THE 

APPELLANT

 

V.        §                      COUNTY
COURT AT LAW #2

 

THE STATE OF TEXAS,

APPELLEE   §                      HENDERSON COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM
OPINION ON REHEARING

            Cody
Will Craig filed a motion for rehearing, which is overruled.  The court’s opinion of May 9, 2007 is hereby
withdrawn, and the following opinion is substituted in its place.

            Cody
Will Craig appeals his conviction for theft of between fifty and five hundred
dollars, for which he was sentenced to confinement for one hundred eighty days,
probated for twelve months.  In three
issues, Appellant argues that (1) the trial court lacked jurisdiction to
consider the matter, (2) the trial court erred in admitting evidence, and (3)
the evidence was factually insufficient to support the trial court’s
judgment.  We affirm.

 

Background

            On October 26, 2005, Appellant was
charged by information with Class A Theft. Specifically, the information
alleged that on or about April 29, 2005, Appellant appropriated “by acquiring
or otherwise exercising control over property, to wit:  money of the value of $500 or more but less
than $1,500.00, from Friends of Purtis Creek, Inc., the owner thereof with
intent to deprive the owner of the property.”








            The Friends of Purtis Creek (“Friends”)
is an organization formed to support Purtis Creek State Park and its campground
located in Henderson County, Texas. 
Appellant was born on October 26, 1987.  During the relevant time period, Appellant
lived on park grounds with his parents, Gary and Sherry Craig, and his younger
brother, Cole Craig.  In addition to
being park hosts, Gary Craig was president of the Friends group until March
2005.  Sherry Craig was secretary of
Friends until her death on February 25, 2005.

            In its support of Purtis Creek State
Park, Friends sought to raise money through membership dues, taking donations
in exchange for making firewood available to park visitors, and in conjunction
with events it organized.  Mary Lou Hyde,
the treasurer of Friends during the relevant time period, was required to have
charge and custody of and to be responsible for all funds.  Because Hyde had relocated to Mesquite,
Texas, Gary Craig often permitted Appellant, who was also a Friends member and
worked as a volunteer in the park office, to retrieve donations.  In collecting the donations, a procedure was
followed in which the Friends volunteer and a park employee would count the
money collected and sign a generic receipt form, on which the source of the
money was noted.  The person collecting
the money would also sign or initial the receipt form.

            At trial, the State introduced
several dated receipts that indicated the amounts collected and other
information regarding the source of the funds collected and the identity of the
person making the collection.  The State
further introduced bank statements from October 2004 through April 2005, which
purported to indicate that the total amounts shown on the various receipts were
not deposited in the Friends bank account.

            Appellant testified on his own
behalf and stated that he received the funds indicated by the receipts.  Specifically, Appellant’s testimony reflects
the following transactions:








 

•                                             
                Appellant received $52.00 on October 16, 2004.

•                     
Appellant
received $164.00 on October 20, 2004.

•                                             
                Appellant received $406.00 on
October 30, 2004.

•                     
Appellant
received $281.00 on December 15, 2004.

•                    
Appellant received
$330.50 on either February 3, 2005 or February 13, 2005.

 

 

Appellant
testified that on October 16 and 20, 2004 respectively, he took the funds he
received on those days to the travel trailer where his family resided, at which
time his mother took possession of the funds.  Appellant further testified that on
October 30, 2004 he took the funds he received that evening directly to Hyde,
who was present at the Halloween party at Purtis Creek.[1]  Moreover, Appellant stated that he took
the funds he received on December 15, 2004 and February 3, 2005 respectively to
his home and gave them to his mother and father.  Appellant denied that he appropriated any
money or thing belonging to the park for his own purpose.

            Gary Craig testified that he
authorized Appellant to retrieve the Friends money from the park office.  Gary Craig further testified that money was
delivered to Hyde at the Halloween party on October 30, 2004.  Gary Craig stated that Sherry Craig took
three or four envelopes containing Friends donations to Hyde in February
2005.  Gary Craig further stated that he
and his wife always counted the money to make sure it matched the amount on the
signed receipt, but that no written receipt ordinarily was made indicating Hyde’s
taking possession of Friends funds.  Gary
Craig related that among the funds received in either October or November 2004
were two checks made out to Purtis Creek State Park instead of Friends, which
were turned over to Justin Rhodes to cash.[2]  Gary Craig also testified that Hyde had
neglected her duties as Friends treasurer and that he believed she had taken
the money.  At the time of trial, Hyde
was also charged with theft and invoked her Fifth Amendment right to not testify.  

            Gary Craig also testified that the
entirety of the money collected during the relevant time period was not
ultimately deposited in the Friends bank account.  The bank statements for the Friends account
and the corresponding deposit slips admitted into evidence indicate the
following:

 

•                                             
                During October 2004, no deposits
were made.

•                     
During November
2004, five deposits were made.  There is
a corresponding deposit slip for each deposit listed in the statement.  Each deposit slip is dated November 4, 2004.  The statement lists the deposit date as
November 5, 2004.  The sum of the
November 2004 deposits is $835.00.

                

•                     
The first deposit
is in the amount of $50.00 and contains the notation “FPC Donation.”

•                     
The second
deposit is in the amount of $55.00 and contains the notation “Pumpkin
Donations.”

•                     
The third deposit
is in the amount of $163.00 and contains the notation “Gate  receipts - Halloween.”

•                     
The fourth
deposit is in the amount of $210.00 and contains the notation “Halloween
Donations.”

•                    
The fifth deposit is in
the amount of 357.00 and contains the notation “Wood.”

 

•                                             
                During December 2004, no
deposits were made.

•                                             
                During January 2005, there was
no account activity.[3]

•                                             
                During February 2005, no
deposits were made.

•                                             
                During March 2005, no deposits
were made.

•                                             
                During April 2005, two deposits
were made.  There is a corresponding
deposit slip for each deposit listed in the statement.  The sum of the April 2005 deposits is
$6,512.62.

 

•                     
The first deposit
is dated March 28, 2005 and is in the amount of $5,679.62.  The statement lists the deposit date as March
29, 2005.  There is no notation
indicating the source of the funds deposited.

•                    
The second deposit is
dated March 30, 2005 and is in the amount of $833.00.  The statement also lists the deposit date as
March 30, 2005.  There is no notation
indicating the source of the funds deposited.

 

 

            At the close of evidence, Appellant
moved for a directed verdict, which was denied.[4]  The case was submitted to the jury on the
lesser included offense of Class B theft.[5]  Ultimately, the jury found Appellant guilty
of Class B theft.  Following a bench
trial on punishment, the trial court sentenced Appellant to confinement for one
hundred eighty days, probated for twelve months.  This appeal followed. 

 

Jurisdiction

            In his first issue, Appellant
argues that the juvenile court had exclusive jurisdiction over the matter
because the evidence indicated that, in the first two instances, Appellant
received the funds allegedly stolen prior to his seventeenth birthday.  Appellant further argues that since the State
charged Appellant with Class A theft, which required consideration of the
aggregate of the money allegedly appropriated, the juvenile court had exclusive
jurisdiction notwithstanding evidence concerning instances of funds Appellant
received after his seventeenth birthday.

            A court of competent jurisdiction is
one that has jurisdiction of the offense. 
Bonner v. State, 832 S.W.2d 134, 136 (Tex. App.–Amarillo
1992, pet. ref’d).  In other words, it is
one that has authority over the person, authority over the subject matter,
i.e., the offense, and power to enter the particular judgment rendered.  See State v. Hall, 794 S.W.2d
916, 919 (Tex. App.–Houston [1st Dist.] 1990), aff’d, 829 S.W.2d 184
(Tex. Crim. App. 1992).  

            The juvenile court has exclusive
original jurisdiction over proceedings in all cases involving the delinquent
conduct or conduct indicating a need for supervision engaged in by a person who
was a “child” at the time the person engaged in the conduct.  See Tex.
Fam. Code Ann. § 51.04(a) (Vernon 2002). 
If the defendant in a criminal proceeding is a child who is charged with
an offense other than perjury, a traffic offense, a misdemeanor punishable by
fine only other than public intoxication, or a violation of a penal ordinance
of a political subdivision, unless he has been transferred to criminal court
under section 54.02 of the family code, the court exercising criminal
jurisdiction shall transfer the case to the juvenile court.  See Tex.
Fam. Code Ann. § 51.08(a) (Vernon Supp. 2006).  “Child” means a person who is (A) ten years
of age or older and under seventeen years of age; or (B) seventeen years of age
or older and under eighteen years of age, who is alleged or found to have
engaged in delinquent conduct or conduct indicating a need for supervision as a
result of acts committed before becoming seventeen years of age.  Tex.
Fam. Code Ann. § 51.02(2) (Vernon Supp. 2006).

            In the case at hand, Appellant was
charged with one count of Class A theft, which was alleged to have occurred on
or about April 29, 2005.  As set forth
above, the State conceded that the wording of the information did not give
Appellant notice that the State intended to rely on the aggregate amounts of
various instances of alleged theft to satisfy the value element for Class A
theft.  As such, the case was submitted
to the jury on the lesser included offense of Class B theft.  As Appellant suggests, he received funds on
October 16 and 20, 2004 while he was still sixteen years old.  Yet the funds Appellant received on these
dates were not the only receipts underlying the State’s allegations of
theft.  As the State notes in its brief,
Appellant admitted receiving funds in excess of fifty dollars after he turned
seventeen years old.  Although Appellant
contends that the State intended to charge him with aggregate theft, the State
conceded its failure to so charge Appellant and submitted the case to the jury
on Class B theft.  Thus, the fact that
there was evidence before the jury that Appellant received money before his
seventeenth birthday did not deprive the trial court of jurisdiction because
there was evidence of completed acts occurring subsequent to Appellant’s
seventeenth birthday supporting his conviction for Class B theft.[6]  Therefore, we hold that the trial court had
jurisdiction over the instances of alleged theft that occurred after Appellant’s
seventeenth birthday.  Appellant’s first
issue is overruled.

 

Extraneous Bad Acts

            In his second issue, Appellant
argues that the trial court erred in admitting evidence concerning various
instances of prior bad acts in violation of Texas Rule of Evidence 404(b).  Specifically, Appellant argues that the trial
court erroneously admitted evidence that (1) he was given $10.00 in membership
dues by Mary Hilliard, a state employee who worked at the park and was,
therefore, ineligible for membership, which he failed to return; (2) he asked a
park patron to leave the park for violating Parks and Wildlife policy,
following which the ejected patron filed a complaint; (3) he borrowed a digital
camera purchased for Friends with the organization’s funds for his personal use
and, during that time, misplaced some of its necessary components; and (4) he
had possession of a radar detector.

            To preserve error related to the
admission of extraneous offenses, the defendant must timely object that the
evidence is inadmissible under Rule 404(b), at which point the State must show
that the proffered evidence is relevant apart from its tendency to show that
the defendant is a criminal.  See Lockhart
v. State, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992).  Further, the trial court should honor any
request by the defendant for the State to articulate into the record the
purpose for which the evidence is offered. 
Id.  If the trial
court determines that the evidence is relevant, the defendant must further
object under Texas Rule of Evidence 403. 
Id.  

            Furthermore, to preserve error, a
party is required to continue to object each time inadmissible evidence is
offered.  See Ethington v. State,
819 S.W.2d 854, 858 (Tex. Crim. App. 1991). 
There are two exceptions to the contemporaneous objection rule.  Id.  First, a party need
not contemporaneously object when the inadmissible evidence pertains to a
previously lodged, timely running objection. 
Id. at 858–59. 
Alternatively, where a party lodges objections to inadmissible evidence,
and the court hears such objections outside the jury’s presence and rules that
it be admitted, such objections are deemed to apply to such evidence when it is
admitted before the jury without the necessity of the party’s objections being
repeated.  Id. at 859; see
also Tex. R. Evid. 103(a)(1).

            We first consider the testimony
concerning Appellant’s failure to return membership dues to Mary Hilliard.  We note that Appellant failed to timely
object to this testimony when it was first elicited.  An objection must be timely; that is, the
defendant must object to the evidence, if possible, before it was actually
admitted or as soon as the objectionable nature of the evidence becomes apparent.  The defendant also must have moved to strike
the evidence, that is, to have it removed from the body of evidence the jury is
allowed to consider.  See Ethington,
819 S.W.2d at 858; see also Tex.
R. App. P. 33.1(a).  Therefore,
we hold that Appellant waived the error, if any, of which he now complains.

            We next consider Appellant’s
contention that the trial court improperly admitted evidence that Appellant
asked a park patron to leave the park for violating Parks and Wildlife policy
in contravention of Rule 404(b).  At the
first instance in which this testimony was offered, Appellant objected to the
testimony arguing that it was irrelevant, amounted to hearsay, and denied
Appellant his right to confrontation. 
However, Appellant did not make an objection with regard to Rule
404(b).  Therefore, Appellant failed to
preserve error, if any.  See Tex. R. App. P. 33.1(a); Lockhart,
847 S.W.2d at 573 (To preserve error related to the admission of extraneous
offenses, the defendant must timely object that the evidence is inadmissible
under rule 404(b)); Ethington, 819 S.W.2d at 858 (The defense
must have stated specifically the basis for the objection unless the particular
ground was apparent from the context.).

            We next consider Appellant’s
argument that the trial court improperly admitted evidence that he borrowed a
digital camera purchased for Friends with the organization’s funds and, while
using it for unrelated purposes, misplaced some of its necessary
components.  The testimony pertaining to
this evidence and Appellant’s ensuing objection is as follows:

 

PROSECUTING ATTORNEY:         Now,
there’s been some discussion of the Craigs loaning property to the park to –
was there ever any instance of [Appellant] using park equipment without
permission.

 

                WITNESS:                            We had a camera of
the Friends group that he had used.

 

PROSECUTING ATTORNEY:         What
– he didn’t have permission to use this camera?

 

                WITNESS:                            Not for personal reasons.

 

PROSECUTING ATTORNEY:         How
do you know he was using it for personal reasons?

 

                WITNESS:                            Well, when it was
returned we didn’t have any park-related pictures on it to my knowledge, and it
was missing a – 

 

APPELLANT’S COUNSEL:              Your
Honor, may I object, and may I approach the Bench?

 

                THE COURT:                      Yes.

 

                                (At
Bench, on the record.)

 

APPELLANT’S COUNSEL:              Remember
the limine.  Remember the limine about
character evidence and the very strict rules about proving other bad acts in
order to prove guilt of the act charged. 
What we’ve got here is a purpose –

 

                                                                ....

 

APPELLANT’S COUNSEL:              Purposeful
abuse of the rules.  This is not
proper.  This is not what you do.

 

PROSECUTING ATTORNEY:         There’s
no hearsay – Your Honor, Rule 404(b) allows me to prove evidence of other bad
acts to show lack of mistake, to show motive. 
This is relevant to show – basically to show this young man felt that
anything in the park belonged to him, he could do whatever he wanted with it
because of the volunteer work he did.  He
had a right basically to run wild with the park’s equipment and
merchandise.  I think that is very
relevant because that same mentality then explains why he would feel justified
later on embezzling the money. 
[Appellant’s Counsel] did not file any sort of 404(b) motion basically
requiring notice for this.  I’m allowed
to get into this at this point in the trial, and again he opened the door on
character evidence coming in with his own cross-examination of this
witness.  I did not bring this up on the
direct of the witness.  He brought up how
he worked there.  He brought up
equipment.  He brought up [Appellant’s]
being a good worker.  This is all
relevant to directly rebut what they say. 


 

                THE COURT:                      I agree with [the
Prosecuting Attorney].

 

APPELLANT’S COUNSEL:              I
ask you to remember it when we get to real character evidence. 

 

                THE COURT:                      Okay.

 

APPELLANT’S COUNSEL:              Remember
that the door is being kicked open.

 

PROSECUTING ATTORNEY:         The
door wasn’t kicked open by me.

APPELLANT’S COUNSEL:              It’s
being kicked open now.

 

                THE COURT:                      All right.  Go, go.

 

                                (Bench
Conference concluded.)

 

 

The
State then elicited testimony that Appellant had misplaced the battery and
charger for the camera.

            We iterate that, if a defendant
makes a Rule 404(b) objection and if the trial court, considering the State’s
showing that the proffered evidence is relevant apart from its tendency to show
that the defendant is a criminal, determines that the evidence is relevant, the
defendant must further object under Texas Rule of Evidence 403.  See Lockhart, 847 S.W.2d at 573.  Although Appellant responded to the trial
court’s ruling asking the court to “remember that the door is being kicked
opened” and, further, engaged in a brief debate with the prosecuting attorney
as to who had kicked the door open, he failed to make any argument pursuant to
Rule 403.  As such, we hold that
Appellant waived the error, if any, of which he now complains.

            We finally consider Appellant’s
argument that the trial court improperly admitted evidence that he possessed a
radar detector.  However, the record
reflects that Appellant failed to object to testimony concerning his possession
of a radar detector when such testimony was first elicited.  As Appellant is required to lodge a timely
objection to preserve error, by his failure to do so, he has waived any error
concerning the admissibility of such testimony. 
See Tex. R. App. P.
33.1; Ethington, 819 S.W.2d at 858.  Appellant’s second issue is overruled.

 

Factual Sufficiency

            In his third issue, Appellant argues
that the evidence is factually insufficient to support the jury’s verdict.  In conducting our review, we must first
assume that the evidence is legally sufficient under the Jackson
standard.[7]  See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).  We then
consider all of the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compare it to the evidence that
tends to disprove that fact.  See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  Although we are authorized to disagree with
the jury’s determination, even if probative evidence exists that supports the
verdict,  see Clewis, 922
S.W.2d at 133, our evaluation should not substantially intrude upon the jury’s
role as the sole judge of the weight and credibility of witness testimony.  Santellan, 939 S.W.2d at
164.  Where there is conflicting
evidence, the jury’s verdict on such matters is generally regarded as
conclusive.  See Van Zandt v. State,
932 S.W.2d 88, 96 (Tex. App.– El Paso 1996, pet. ref’d).  Ultimately, we must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine our confidence in the
jury's determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see
also Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App.
2006) (Evidence is factually insufficient only when reviewing court objectively
concludes that the great weight and preponderance of the evidence contradicts
the jury’s verdict.).

            In the case at hand, the crux of
Appellant’s contention is that the evidence raises compelling alternative
hypotheses other than his guilt, most notably, according to Appellant, that if
money was stolen from Friends, it was taken by the absentee treasurer, Mary Lou
Hyde, rather than Appellant.

            Assuming as we must that the
evidence is legally sufficient to support the jury’s verdict, we have reviewed
the record in its entirety.  As Appellant
argues, the testimony elicited from both Appellant and Gary Craig supports the
conclusion that Appellant tendered the funds he was accused of stealing to his
parents who, in turn, gave the funds to Hyde. 
Yet we iterate that our evaluation should not substantially intrude upon
the jury’s role as the sole judge of the weight and credibility of witness
testimony, see Santellan, 939 S.W.2d at 164, and where
there is conflicting evidence, the jury’s verdict on such matters is generally
regarded as conclusive.  See Van
Zandt, 932 S.W.2d at 96.  It
follows that the jury was entitled to find the testimony offered by Appellant
and Gary Craig was not credible and that evidence presented by the State
amounted to a more accurate portrayal of the events which had, in fact,
transpired.  See, e.g., Thompson
v. State, 54 S.W.3d 88, 97 (Tex. App.–Tyler 2001, no pet.).

            Our review of the record as a whole,
with consideration given to all of the evidence, both for and against the jury’s
finding, has not revealed to us any evidence that causes us to conclude that
the proof of guilt is so obviously weak or is otherwise so greatly outweighed
by contrary proof as to render Appellant’s conviction clearly wrong or
manifestly unjust.  Therefore, we hold
that the evidence is factually sufficient to support the jury’s verdict.  Appellant’s third issue is overruled.

 

Disposition

            Having overruled Appellant’s first,
second, and third issues, we affirm the trial court’s judgment.

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

 

Opinion delivered
July 31, 2007.

Panel consisted of Worthen, C.J., Griffith, J., and
Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT
PUBLISH)











[1] Appellant stated that the funds he collected on October 16 and 20,
over which his mother had possession, were given to Hyde as well.  However, it is not clear from the record
whether Appellant gave the October 16 and 20 funds to Hyde along with the
October 30 funds.





[2] The record is unclear as to whether Rhodes ever cashed the checks and
returned the cash to the Friends group.





[3] There was no statement for January 2005 admitted into evidence.  Appellant conceded that the bank did not
issue a statement when there was no account activity.





[4] Appellant also moved for a directed verdict after the State rested its
case.





[5] The State conceded that the wording of information did not give
Appellant notice that the State intended to rely on the aggregate amounts of
various instances of alleged theft to satisfy the value element for Class A
theft.





[6] Appellant does not raise the issue of legal sufficiency on appeal.





[7] See Jackson v. Virginia, 443 U.S. 307, 320, 99 S. Ct.
2781, 2789, 61 L. Ed. 2d 560 (1979) (The
standard for reviewing a legal sufficiency challenge is, after examining the
evidence in the light most favorable to the jury’s verdict, whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.); see also Johnson v. State, 871
S.W.2d 183, 186 (Tex. Crim. App. 1993).