The STATE of Texas

v.

John Dominick COLYANDRO, James Walter Ellis, and Thomas Dale Delay, Appellees.

Nos. PD–826–06 to PD–833–06.

Court of Criminal Appeals of Texas.

June 27, 2007.

Joseph A. Turner, Austin, for Appellant.

Rick Reed, Asst. District Atty., Travis, Matthew Paul, State's Atty., Austin, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, WOMACK, and HERVEY, JJ., joined.

Charged with conspiracy to violate certain provisions of the Election Code, John Dominick Colyandro, James Walter Ellis, and Thomas Dale Delay moved to quash the charges. They contended that the State failed to allege an offense based on our prior decisions implicitly holding that the offenses defined in Title 4 of the Penal Code, which includes the criminal conspiracy statute, do not apply to offenses defined outside the Penal Code. The trial judge agreed and quashed the charges. The State appealed, and the Third Court of Appeals, bound by our prior holdings,

affirmed. The State then petitioned for review, arguing that the lower court erred because our prior decisions can be distinguished or should be overruled. We hold that our prior decisions are not subject to distinction and, after examining the Legislature's actions following those decisions, we adhere to our precedent and affirm the Court of Appeals's judgment.

## I. Procedural Background

In 2005, two Travis County grand juries presented indictments charging Colyandro, Ellis, and Delay with, among other things, conspiracy to violate the Election Code. In the third count of an indictment returned by a grand jury to the 147th Judicial District Court on September 13, 2005, Colyandro and Ellis were charged with conspiracy to make an unlawful political contribution in violation of Texas Penal Code Section 15.02 and Sections 253.003(a), 253.094(a), and 253.104 of the Election Code on or about September 13, 2002. An indictment returned on September 28, 2005, to the 147th Judicial District Court charged Colyandro, Ellis, and Delay with conspiracy to make an unlawful political contribution in violation of Section 15.02, Penal Code, and Election Code Sections 253.003, 253.094, and 253.104 on or about September 13, 2002. Finally, a two-count indictment was returned on October 3, 2005, to the 403rd Judicial District Court. The first count of the indictment, which presented two charges, alleged in part that Colyandro, Ellis, and Delay conspired to make an illegal political contribution to a candidate for the Texas House of Representatives in violation of Section

15.02 of the Penal Code and Subchapter D of Chapter 253 of the Election Code "on or about and between the sixth day of September, A.D., 2002, and the fourth day of October, A.D., 2002[.]"

Colyandro, Ellis, and Delay moved to quash these charges, contending that they did not allege an offense under Texas law. Relying on our decisions in *Moore v. State*[1] and *Baker v. State*,[2] Colyandro, Ellis, and Delay argued that Section 15.02 of the Penal Code—the criminal conspiracy statute contained in Title 4 of the Penal Code—did not apply to Election Code violations in 2002.

In *Moore*, the appellant was convicted in 1975 under the newly-enacted 1974 Penal Code of "attempting to obtain a controlled substance by fraud."[3] On appeal, the appellant claimed that the indictment was fatally defective because the Penal Code's criminal attempt provision, Section 15.01(a), located in Title 4, did not apply to the Controlled Substances Act.[4] Finding that Section 1.03(b) of the Penal Code specified that only Titles 1, 2, and 3 of the Penal Code were applicable to offenses defined outside the Penal Code, we held that the attempt statute did not apply to the Controlled Substances Act.[5] Responding to the State's argument "that the Legislature intended for the criminal attempt provision ... to apply to the Controlled Substances Act[,]"[6] we noted that the Legislature omitted any attempt provision when it enacted the Controlled Substances Act shortly before enacting the new Penal Code even though it had retained such a provision in the Dangerous Drug Act.[7] We stated:

1. 545 S.W.2d 140 (Tex.Crim.App.1976).

2. 547 S.W.2d 627 (Tex.Crim.App.1977).

3. 545 S.W.2d at 141.

4. *Id.* at 141–42.

5. *Id.* at 142.

6. *Id.* at 141.

7. *Id.* at 142.

we cannot agree that the Legislature in enacting the Controlled Substances Act ... made such omission with the knowledge that the new Penal Code (effective four months after the Controlled Substances Act) would make the necessary provisions for making any attempt to violate any provisions of the Controlled Substances Act a criminal offense.[8]

Less than five months later, in *Baker*, we held that the Penal Code's criminal conspiracy statute did not apply to the Controlled Substances Act.[9] Following *Moore*, we concluded: "Since the criminal conspiracy provisions of ... Penal Code, Sec. 15.02 are also contained in Title 4 of the new Penal Code, the general provisions of ... Penal Code, Sec. 1.03(b) ... do not apply to Sec. 15.02[.]"[10] As a result, we reversed the trial court's judgment revoking the appellant's probation for the offense of conspiracy to sell marijuana, remanded the case, and ordered the prosecution dismissed.[11]

We reaffirmed *Moore* and *Baker* in subsequent cases: *Ex parte Lopez*,[12] *Ex parte Barnes*,[13] *Ex parte Russell*,[14] and *Brown v. State*.[15]

Shortly after the *Moore–Baker* line of cases was issued, the Legislature added Section 4.011 to the Controlled Substances Act in 1981.[16] When enacted, Section 4.011 provided that "[t]he provisions of Title 4, Penal Code, apply to Section 4.052 and offenses designated as aggravated offenses under Subchapter 4 of this Act...."[17] In 2003, the Legislature added a similar provision to the Election Code, Section 1.018, titled "Applicability of Penal Code."[18] Section 1.018 states: "In addition to Section 1.03, Penal Code, and to other titles of the Penal Code that may apply to this code, Title 4, Penal Code, applies to offenses prescribed by this code."[19]

Countering the arguments of Colyandro, Ellis, and Delay, the State argued that *Moore* and *Baker* are distinguishable because they addressed the Controlled Substances Act, not the Election Code, and, in the alternative, were wrongly decided. After reviewing the documents filed by the parties, the trial judge quashed the Election Code-based conspiracy charges. The indictment returned on September 28, 2005, was dismissed. The State then filed interlocutory appeals challenging the trial judge's decision.[20]

The Austin Court of Appeals affirmed the trial judge's decision.[21] The court is-

8. *Id.*

9. 547 S.W.2d at 628.

10. *Id.* at 629.

11. *Id.*

12. 549 S.W.2d 401, 402 (Tex.Crim.App.1977).

13. 547 S.W.2d 631, 632 (Tex.Crim.App.1977).

14. 561 S.W.2d 844, 844–45 (Tex.Crim.App. 1978).

15. 568 S.W.2d 137, 138 (Tex.Crim.App.1978).

16. Tex.Rev.Civ. Stat. Ann. art. 4476–15, § 4.011 (Vernon Supp.1981), *added by* Acts 1981, 67th Leg., ch. 268, § 2, eff. Sept. 1, 1981 (current version at Tex. Health & Safety

Code Ann. § 481.108 (Vernon 2003) (stating "Title 4, Penal Code, applies to an offense under this chapter.")); *Woods v. State*, 801 S.W.2d 932, 942 (Tex.App.-Austin 1990, pet. ref'd).

17. Tex.Rev.Civ. Stat. Ann. art. 4476–15, § 4.011.

18. Tex. Elec.Code Ann. § 1.018 (Vernon Supp. 2004), *added by* Acts 2003, 78th Leg., ch. 393, § 2, eff. Sept. 1, 2003.

19. *Id.*

20. Tex.Code Crim. Proc. art. 44.01(a)(1).

21. *State v. DeLay*, 208 S.W.3d 603, 607–08 (Tex.App.-Austin 2006); *State v. Colyandro*, Nos. 03–05–00811–CR, 03–05–00812–CR, 03–

sued a published opinion styled *State v. DeLay*[22] and two unpublished opinions styled *State v. Colyandro*[23] and *State v. Ellis*,[24] which cited the court's reasoning in *DeLay* as controlling.[25] In the court of appeals, the State reasserted the arguments that it had presented to the trial judge—that *Moore* and *Baker* can be distinguished and, alternatively, were incorrectly decided.[26]

The court of appeals first considered the State's claim that *Moore* and *Baker* were wrongly decided. It concluded that as an intermediate appellate court, it was without authority to overrule this Court's precedent and was therefore bound to follow *Moore* and *Baker*.[27] But the court did suggest that we revisit *Baker*, stating that "*Baker* appears to be based on questionable reasoning and is arguably in conflict with the history of the criminal conspiracy offense in Texas as well as the growing legislative trend to propagate felony offenses throughout the various statutory codes."[28]

Focusing on the history of Texas's criminal conspiracy law, the court stated that "*Baker* was a marked departure from the generally applicable conspiracy offense that had been on the books for ninety years."[29] The court also stated that *Baker's* holding was not consistent "with the state bar committee on the revision of the penal code's comment that section 15.02(a) was intended to 'clarify present law without substantial alteration.'"[30] Looking at the criminal conspiracy statute and the definition of "felony" provided in Section 1.07(23) of the Penal Code, the court added that when read together, nothing in these provisions "suggests a legislative intent to limit conspiracy to offenses found within the penal code."[31] The court then noted that Section 1.03(b) "does not necessarily limit the applicability of other provisions."[32] Last, the court observed that the Legislature has codified numerous felony offenses outside the Penal Code and that it is "unlikely that the legislature would have intended to eliminate criminal liability for conspiracy in such a panoply of felony offenses."[33]

The court then considered whether *Baker* is distinguishable and "should be limited in application to the controlled substances act."[34] Rejecting the State's argument

05–00813–CR, 2006 Tex.App. LEXIS 3195, at *1–2, 2006 WL 1041054, at *1 (Tex.App.-Austin Apr.19, 2006) (not designated for publication); *State v. Ellis*, Nos. 03–05–00814–CR, 03–05–00815–CR, 03–05–00816–CR, 2006 Tex.App. LEXIS 3192, at *1–2, 2006 WL 1041051, at *1 (Tex.App.-Austin Apr.19, 2006) (not designated for publication).

**22.** *DeLay*, 208 S.W.3d at 603.

**23.** *Colyandro*, 2006 Tex.App. LEXIS 3195, 2006 WL 1041054.

**24.** *Ellis*, 2006 Tex.App. LEXIS 3192, 2006 WL 1041051.

**25.** *Colyandro*, 2006 Tex.App. LEXIS 3195, at *2, 2006 WL 1041054, at *1; *Ellis*, 2006 Tex.App. LEXIS 3192, at *2, 2006 WL 1041051, at *1.

**26.** *DeLay*, 208 S.W.3d at 604, 607.

**27.** *Id.* at 607.

**28.** *Id.*

**29.** *Id.* at 606 (citing Act of Feb. 4, 1884, 18th Leg., 1st C.S., ch. 14, § 1, 1884 Tex. Gen. Laws 25, 25).

**30.** *Id.* (citing Texas Penal Code, A Proposed Revision § 15.02 cmt. at 137 (Final Draft October 1970)).

**31.** *Id.*

**32.** *Id.* (citing Tex. Penal Code Ann. § 1.03(b)).

**33.** *Id.*

**34.** *Id.* at 607.

that the reasoning we used in *Moore* is "inapplicable to this case because the legislative history of the election code differs from that of the controlled substances act[,]" the court stated that "the discussion of legislative history in *Moore* was not carried forward by the court of criminal appeals in *Baker*." [35] *Baker*, the court reasoned, was based solely on an interpretation of Section 1.03(b). [36] As a result, the court held that *Baker* "applies with equal force to any offense found outside the penal code whether in the controlled substance act or the election code" and that the trial judge correctly found "that *Baker* generally limits the application of the penal code's criminal conspiracy provision to felony offenses contained in the penal code." [37]

The State petitioned for review, presenting the following ground for our consideration: "The court of appeals erred in holding that, prior to September 1, 2003, the criminal conspiracy provisions of section 15.02 of the Texas Penal Code did not apply to the felony offense of making an illegal contribution under the Texas Election Code." We granted review.

## II. Analysis

■ Advancing the same arguments it offered in the district court and the court of appeals, the State urges us to (1) expressly overrule *Moore* and *Baker* or (2) limit their application.

### A.

We first address the State's argument that *Moore* and *Baker* should be limited.

The State argues that the court of appeals erred by extending *Moore* and *Baker* to offenses defined in the Election Code and requests that we restrict *Moore* and *Baker* to inchoate offenses involving an object offense defined in the Controlled Substances Act.

Title 1 of the Penal Code, labeled "INTRODUCTORY PROVISIONS," includes Chapter 1, which is designated "GENERAL PROVISIONS." [38] Section 1.03 of the Penal Code is located in Chapter 1 of Title 1 and is titled "Effect of Code." [39] The version of Section 1.03(b) in effect when *Moore* and *Baker* were decided stated:

> The provisions of Titles 1, 2, and 3 of this code apply to offenses defined by other laws, unless the statute defining the offense provides otherwise; however, the punishment affixed to an offense defined outside this code shall be applicable unless the punishment is classified in accordance with this code. [40]

In *Moore*, based on our reading of Section 1.03(b), we held that Section 1.03(b) precludes the application of the criminal attempt statute, contained in Title 4 of the Penal Code, to offenses in the Controlled Substances Act. [41] And in line with our interpretation of Section 1.03(b) in *Moore*, in *Baker* we held that the criminal conspiracy statute, also contained in Title 4, does not apply to offenses in the Controlled Substances Act. [42] As the State correctly concedes, our interpretation of Penal Code Section 1.03(b) in *Moore* and *Baker* yielded broad implicit holdings—that the inchoate

35. *Id.*

36. *Id.*

37. *Id.* at 607–08.

38. Acts 1973, 63rd Leg., ch. 399, § 1, eff. Jan. 1, 1974 (current version at Tex. Penal Code Ann. § 1.03(b) (Vernon 2003)).

39. *Id.*

40. *Id.*

41. 545 S.W.2d at 142.

42. 547 S.W.2d at 629.

offenses contained in Title 4 do not apply to offenses defined outside the Penal Code. Therefore, the court of appeals did not err in extending *Moore* and *Baker* to criminal offenses defined in the Election Code, and we decline the State's invitation to limit our holdings in those cases.

## B.

**1.**

We next consider the State's contention that *Moore* and *Baker* should be overruled. Relying on our decision in *Boykin v. State,* which established our principal rules for statutory interpretation,[43] the State argues that under the plain language of Section 15.02 of the Penal Code and the definition of "felony" in Section 1.07(a)(23) of the Penal Code, the offense of criminal conspiracy applies to all felony offenses defined under Texas law. Continuing, the State claims that when the plain language of Sections 1.07(a)(23) and 15.02 of the Penal Code are considered in combination with the plain language of Sections 253.003, 253.094, and 253.104 of the Election Code, the offense of criminal conspiracy applies to the felony offense of unlawfully making a political contribution.

To put the State's argument in perspective, a review of the statutes cited by the State is beneficial at this point. "Felony," as defined in Penal Code Section 1.07(a)(23), "means an offense so designated by law or punishable by death or confinement in a penitentiary."[44] Section 15.02, Penal Code, located in Title 4, de-fines the offense of criminal conspiracy and states, in relevant part:

(a) A person commits criminal conspiracy if, with intent that a felony be committed:

(1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and

(2) he or one or more of them performs an overt act in pursuance of the agreement.[45]

Section 253.003 of the Election Code defines the offense of "Unlawfully Making or Accepting Contribution."[46] Under Subsection (a) of Section 253.003, "[a] person may not knowingly make a political contribution in violation of" Chapter 253 of the Election Code.[47] Subsection (b) states that "[a] person may not knowingly accept a political contribution the person knows to have been made in violation of" Chapter 253.[48] "A violation of Subsection (a) or (b) is a felony of the third degree if the contribution is made in violation of Subchapter D."[49]

Located in Subchapter D, Section 253.094, titled "Contributions and Expenditures Prohibited," states:

(a) A corporation or labor organization may not make a political contribution or political expenditure that is not authorized by this subchapter.

(b) A corporation or labor organization may not make a political contribution or political expenditure in connection with a recall election, including the circulation

---

**43.** 818 S.W.2d 782, 785–86 (Tex.Crim.App. 1991).

**44.** Tex. Penal Code Ann. § 1.07(a)(23) (Vernon Supp.2002).

**45.** Tex. Penal Code Ann. § 15.02 (Vernon Supp.2002).

**46.** Tex. Elec.Code Ann. § 253.003 (Vernon Supp.2002).

**47.** Tex. Elec.Code Ann. § 253.003(a).

**48.** Tex. Elec.Code Ann. § 253.003(b).

**49.** Tex. Elec.Code Ann. § 253.003(e).

and submission of a petition to call an election.

(c) A person who violates this section commits an offense. An offense under this section is a felony of the third degree.[50]

Section 253.104, also located in Subchapter D, is labeled "Contribution to Political Party."[51] Under Subsection (b), "[a] corporation or labor organization may not knowingly make a contribution authorized by Subsection (a) during a period beginning on the 60th day before the date of a general election for state and county officers and continuing through the day of the election."[52] Subsection (a) permits "[a] corporation or labor organization" to "make a contribution from its own property to a political party to be used as provided by Chapter 257."[53] A violation of Subsection (b) is a third-degree-felony offense.[54]

In opposition, Colyandro, Ellis, and DeLay collectively argue that the plain language of Section 1.03(b) establishes that the criminal conspiracy statute does not apply to offenses defined outside the Penal Code unless an extra-Penal Code provision provides otherwise. And, as a result, they contend that in 2002, Section 15.02 did not apply to violations of the Election Code. They further claim that *Moore* and *Baker* were correctly decided and fault the State for failing to acknowledge the Legislature's response to *Moore* and *Baker*—the addition of Section 4.011 to the Controlled Substances Act—and the Legislature's 2003 amendment to the Election Code,

which added Section 1.018. The Legislature, they argue, could have amended Section 1.03(b) to include Title 4, but did not.

During oral argument, we sought clarification from the State about its position on the various Penal Code provisions at issue. We asked whether Section 1.03(b) has the effect of exporting only Titles 1, 2, and 3 of the Penal Code to offenses defined outside the Penal Code unless the extra-Penal Code statute defining an offense provides otherwise. The State agreed with this characterization of the effect of Section 1.03(b). And when questioned about whether the definition of "felony" in the Penal Code has the effect of importing felony offenses defined outside the Penal Code into certain offenses defined in the Penal Code, and in particular, the criminal conspiracy statute by virtue of the statute's requirement that a person commit the offense "with intent that a felony be committed[,]"[55] the State again agreed with this characterization of the combined effect of the definition of felony and the criminal conspiracy statute.

2.

Over fourteen years after interpreting Section 1.03(b) in *Moore* and *Baker*, we issued our decision in *Boykin*.[56] There, we said that when interpreting a statute to give effect to the "collective legislative intent or purpose," we concentrate "on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment."[57] We will give effect to the plain meaning if, "when read using the

50. TEX. ELEC.CODE ANN. § 253.094 (Vernon Supp.2002).

51. TEX. ELEC.CODE ANN. § 253.104 (Vernon Supp.2002).

52. TEX. ELEC.CODE ANN. § 253.104(b).

53. TEX. ELEC.CODE ANN. § 253.104(a).

54. TEX. ELEC.CODE ANN. § 253.104(c).

55. TEX. PENAL CODE ANN. § 15.02(a).

56. 818 S.W.2d 782.

57. *Id.* at 785.

established canons of construction relating to such text," the meaning of the text "should have been plain to the legislators who voted on it[.]"[58] We will not apply the plain language, however, if (1) the "application of a statute's plain language would lead to absurd consequences that the Legislature could not *possibly* have intended," or (2) the language is ambiguous.[59] In those instances, we will consult extratextual sources to reach a rational interpretation.[60]

Although we did not invoke *Boykin's* rules for statutory construction when discerning the meaning of Section 1.03(b) in *Moore* and *Baker*, our approach nevertheless conformed to *Boykin's* mandate. In *Moore* and *Baker*, we focused on the literal text of Section 1.03(b) and found that Section 1.03(b) does not apply to the criminal attempt and conspiracy statutes.[61] Because Section 1.03(b) references only Titles 1, 2, and 3 of the Penal Code, we concluded that the criminal attempt and conspiracy statutes in Title 4 of the Penal Code did not apply to offenses defined in the Controlled Substances Act.[62] Our review of the predecessor statutes to the Controlled Substances Act in *Moore* was ancillary to our holding.[63] Those statutes were reviewed solely to address the State's argument that the Legislature intended the criminal attempt statute to apply to the Controlled Substances Act.[64] This determination is bolstered by our subsequent decision in *Baker*. As the court below correctly observed, *Baker's* holding was based exclusively on our "interpretation of section 1.03(b) of the penal code to limit the applicability of title 4's conspiracy provision to offenses found within the penal code."[65]

But given the State's arguments here, we must consider whether we reached the correct result in *Moore* and *Baker*; specifically, whether Section 1.03(b) is determinative and therefore precludes the application of the criminal conspiracy statute to felony offenses defined outside the Penal Code. In doing so, we must ask: Were we remiss in considering only Section 1.03(b), thereby failing to take into consideration the criminal conspiracy statute, Section 15.02, Penal Code, and the definition of "felony" in Section 1.07(a)(23) of the Penal Code in *Baker?* Compelling legislative ratification of our prior interpretation of Penal Code Section 1.03(b) leads us to conclude that the answer is no.

■ When faced with a challenge to a prior judicial construction of a statute, we have long recognized that prolonged legislative silence or inaction following a judicial interpretation implies that the Legislature has approved of the interpretation.[66]

---

58. *Id.*

59. *Id.* (emphasis in original).

60. *Id.* at 785–86.

61. *Moore,* 545 S.W.2d at 142; *Baker,* 547 S.W.2d at 629.

62. *Moore,* 545 S.W.2d at 142; *Baker,* 547 S.W.2d at 629.

63. *Moore,* 545 S.W.2d at 142.

64. *Id.* at 141–42.

65. *DeLay,* 208 S.W.3d at 607; *see also Baker,* 547 S.W.2d at 628–29.

66. *Moore v. State,* 868 S.W.2d 787, 790 (Tex. Crim.App.1993) (citing *Watson v. State,* 532 S.W.2d 619, 622 (Tex.Crim.App.1976); *Lockhart v. State,* 150 Tex.Crim. 230, 235, 200 S.W.2d 164, 167–68 (1947) (op. on reh'g)); *State v. Hall,* 829 S.W.2d 184, 187 (Tex.Crim. App.1992); *Lewis v. State,* 58 Tex.Crim. 351, 361–62, 127 S.W. 808, 812 (1910); *see also Watson v. State,* 900 S.W.2d 60, 67 (Tex.Crim. App.1995) (Clinton, J., concurring); *Garcia v. State,* 829 S.W.2d 796, 803 n. 2 (Tex.Crim. App.1992) (Miller, J., concurring).

"[W]e presume the Legislature intends the same construction to continue to apply to a statute when the Legislature meets without overturning that construction." [67] In recognition of this, we have, on occasion, when reaffirming a prior judicial construction of a statute, stated that the prior interpretation was correct when, over the course of many years, it had not been legislatively overruled.[68]

More recently, however, we stated that "legislative inaction does not necessarily equate to legislative approval." [69] When implying legislative ratification, we observed that there is a distinction between legislative inaction after judicial construction and the Legislature's reenactment of a statute following judicial construction:

Certainly when a legislature *reenacts* a law using the same terms that have been judicially construed in a particular manner, one may reasonably infer that the legislature approved of the judicial interpretation. There is considerably less force (though still some) to the argument that if a legislature does not agree with the judicial interpretation of the words or meaning of a statute, the legislature would surely have immediately changed the statute.[70]

Therefore, the following statement, the substance of which originated from a case before us in 1946, remains true today:

"where a statute has been reenacted by the Legislature with knowledge of the judicial construction thereof a court would not be justified in overruling such decision." [71]

The Legislature's actions following *Moore* and *Baker* and their progeny demonstrate that it has ratified our interpretation of Section 1.03(b). Since those decisions, the Legislature has carefully crafted statutes to make offenses defined in Title 4 of the Penal Code directly applicable to offenses defined outside the Penal Code. The Legislature has also retained extra-Penal Code criminal statutes incorporating conspiracy or attempt or both. In other instances, the Legislature has amended or enacted extra-Penal Code criminal statutes to include either conspiracy or attempt or both. At the same time, the Legislature has abstained from amending Section 1.03(b) of the Penal Code to include Title 4.

Shortly after the *Moore–Baker* line of cases, in 1981, the 67th Legislature added Section 4.011 to the Controlled Substances Act, which made Title 4 applicable to Section 4.052, the offense of illegal investment,[72] and offenses designated as aggravated under Subchapter 4 of the Act.[73] The Legislature, therefore, did not provide for the unlimited application of Title 4 to offenses in the Controlled Substances Act. Punishment for an offense was designated to be "the same as the punishment pre-

**67.** *Awadelkariem v. State*, 974 S.W.2d 721, 725 (Tex.Crim.App.1998) (citing *State v. Hardy*, 963 S.W.2d 516, 523 (Tex.Crim.App. 1997)); *see also Lewis*, 58 Tex.Crim. at 361, 127 S.W. at 812.

**68.** *Connolly v. State*, 983 S.W.2d 738, 741 (Tex.Crim.App.1999); *Hall*, 829 S.W.2d at 187; *see also Smith v. State*, 5 S.W.3d 673, 678 (Tex.Crim.App.1999).

**69.** *State v. Medrano*, 67 S.W.3d 892, 903 (Tex. Crim.App.2002).

**70.** *Id.* at 902 (emphasis in original).

**71.** *Collier v. Poe*, 732 S.W.2d 332, 345 (Tex. Crim.App.1987) (citing *Brown v. State*, 150 Tex.Crim. 386, 389, 196 S.W.2d 819, 821 (1946)).

**72.** Tex.Rev.Civ. Stat. art. 4476–15, § 4.052 (Vernon Supp.1981).

**73.** *Added by* Acts 1981, 67th Leg., ch. 268, § 2, eff. Sept. 1, 1981.

scribed for the offense that was the object of the preparatory offense."[74] The 68th Legislature, during the 1983 Regular Session, amended Section 4.011 to include the identical text that was added by the 67th Legislature when Section 4.011 was first enacted.[75] Accordingly, the same qualifications placed on the application of Title 4 by the 67th Legislature remained intact when the next Legislature amended Section 4.011.

In 1989, the 71st Legislature moved the Controlled Substances Act from the Revised Civil Statutes to the Health and Safety Code.[76] Section 481.108 of the Health and Safety Code is the successor statute to Section 4.011. The Legislature again provided similar limitations on the applicability of Title 4 to offenses defined in the Controlled Substances Act. Section 481.108 stated:

> Title 4, Penal Code, applies to Section 481.126[, which defines the offense of Illegal Expenditure and Investment,] and offenses designated as aggravated offenses under this subchapter, except that the punishment for a preparatory offense is the same as the punishment prescribed for the offense that was the object of the preparatory offense.[77]

Notably, despite the addition of a provision making Title 4 applicable to specific offenses in the Controlled Substances Act and subsequent amendments to that provision, all of which were made during a nine-year period, the Legislature never amended Section 1.03(b) of the Penal Code to include Title 4.

The 73rd Legislature amended both Section 481.108 of the Health and Safety Code[78] and Section 1.03(b) of the Penal Code in 1993.[79] Both statutes were considered and amended pursuant to Senate Bill 1067.

In amending Section 481.108, the Legislature further restricted the applicability of Title 4, making it applicable only to the offense of illegal expenditure or investment as defined in Health and Safety Code Section 481.126. As amended, Section 481.108 read as follows:

> Title 4, Penal Code, applies to Section 481.126, except that the punishment for a preparatory offense under Section 481.126 is the punishment for a first degree felony.[80]

The Legislature deleted the reference to offenses identified as aggravated in Section 481.108[81] and also deleted the designation of "aggravated offense" from various offenses defined in Chapter 481.[82]

---

74. *Id.*

75. Acts 1983, 68th Leg., ch. 425, § 4, eff. Aug. 29, 1983; *see also* 68th Leg., ch. 425, H.B. 1191 at 2361–62 (noting reenactment of Section 4.011 and larger effort to revise, recodify, and reenact substantive and procedural laws in the Controlled Substances Act).

76. Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989; *see also Marks v. State*, 830 S.W.2d 113, 114 n. 1 (Tex.Crim.App.1992).

77. Tex. Health & Safety Code Ann. § 481.108 (Vernon 1990).

78. Acts 1993, 73rd Leg., ch. 900, § 2.02, eff. Sept. 1, 1994.

79. Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994.

80. Tex. Health & Safety Code Ann. § 481.108 (Vernon Supp.1994).

81. Acts 1993, 73rd Leg., ch. 900, § 2.02, eff. Sept. 1, 1994.

82. *Id.* (amending Tex. Health & Safety Code Ann. §§ 481.112(c), 481.113(c), 481.114(c), 481.115(c), 481.116(c), 481.117(c), 481.118(c), 481.120(c), 481.121(c), 481.122(a)).

880

Before the Legislature's 1993 amendment of Section 1.03(b), Section 1.03(b) stated:

The provisions of Titles 1, 2, and 3 of this code apply to offenses defined by other laws, unless the statute defining the offense provides otherwise; however, the punishment affixed to an offense defined outside this code shall be applicable unless the punishment is classified in accordance with this code.[83]

The 73rd Legislature deleted the words "of this code" from that Section.[84] It also added Subsection (c) to Section 1.05 of the Penal Code, the "Construction of Code" statute. That provision stated:

(c) In this code:

(1) a reference to a title, chapter, or section without further identification is a reference to a title, chapter, or section of this code; . . . . [85]

With the addition of Subsection (c)(1) to Section 1.05, the deletion of the text "of this code" from Section 1.03(b) indicates that the Legislature deemed the deleted text to be superfluous. Even though Health and Safety Code Section 481.108 and Penal Code Section 1.03(b) were reviewed and amended together, the Legislature did not amend Section 1.03(b) to include Title 4.

During the 1995 Regular Session, the 74th Legislature amended Section 481.108 of the Controlled Substances Act to apply to all offenses in Chapter 481.[86] As enacted, the text of 481.108 stated: "Title 4, Penal Code, applies to an offense under this chapter." [87] Since the 1995 amendment, the text of Section 481.108 has remained unchanged.[88]

At the same time, pursuant to Senate Bill 15, the Legislature also added provisions to the Simulated Controlled Substances Act, the Dangerous Drugs Act, the Volatile Chemicals Act, and the Abusable Volatile Chemicals Act to make Penal Code, Title 4 applicable. Section 482.005, which was added to the Simulated Controlled Substances Act, made Title 4 of the Penal Code applicable to offenses under Chapter 482.[89] Section 483.053 was added to the Dangerous Drugs Act.[90] Section 483.053 made Penal Code Title 4 applicable to an offense under Subchapter C, titled "Criminal Penalties." [91] Section 484.008, which made Title 4 applicable to offenses under Chapter 484, was added to the Volatile Chemicals Act.[92] Finally, Section 485.039 was added to the Abusable Volatile Chemicals Act and provided: "Title 4, Penal Code, applies to an offense under [Subchapter C, Criminal Penalties]." [93] Despite these combined 1995

83. Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994.

84. *Id.*

85. *Id.*

86. Acts 1995, 74th Leg., ch. 318, § 36, eff. Sept. 1, 1995.

87. Tex. Health & Safety Code Ann. § 481.108 (Vernon Supp.1996).

88. Tex. Health & Safety Code Ann. § 481.108 (Vernon 2003; Vernon Supp.2006).

89. Tex. Health & Safety Code Ann. § 482.005 (Vernon Supp.1996; Vernon 2003), *added by*

Acts 1995, 74th Leg., ch. 318, § 39, eff. Sept. 1, 1995.

90. Tex. Health & Safety Code Ann. § 483.053 (Vernon Supp.1996; Vernon 2003), *added by* Acts 1995, 74th Leg., ch. 318, § 40, eff. Sept. 1, 1995.

91. *Id.*

92. Tex. Health & Safety Code Ann. § 484.008 (Vernon Supp.1996), *added by* Acts 1995, 74th Leg., ch. 318, § 42, eff. Sept. 1, 1995.

93. Tex. Health & Safety Code Ann. § 485.039 (Vernon Supp.1996), *added by* Acts 1995, 74th Leg., ch. 318, § 43, eff. Sept. 1, 1995, (cur-

acts, no amendment was made to Section 1.03(b) to include Title 4.

In 2001, the Legislature repealed Section 484.004 from the Volatile Chemicals Act along with numerous other statutes contained in that Act.[94] And finally, in 2003, the Legislature amended the Election Code to make Title 4 of the Penal Code applicable to offenses defined in the Election Code.[95] Again, the Legislature did not amend Section 1.03(b) to include Title 4.

The Legislature has clearly delineated exactly when Title 4 of the Penal Code will apply to offenses defined outside of the Penal Code. In the thirty years since *Moore* and *Baker* were decided, the Legislature has not amended Section 1.03(b) to include Title 4. Instead, it has taken an unmistakable piecemeal approach when it comes to making the offenses contained in Title 4 of the Penal Code applicable to extra-Penal Code criminal offenses. Although we generally presume that the

Legislature was aware of our interpretation of a particular statute when it later amends or reenacts that statute after we have rendered a judicial construction,[96] in this instance, we can impute actual knowledge. Significantly, each of these acts is in accord with our decisions in *Baker* and *Moore*, and when considered collectively, they overwhelmingly show continued legislative approval of our interpretation of Penal Code Section 1.03(b).

Consistent with the approach that the Legislature has taken when making Title 4 applicable to offenses defined outside the Penal Code, the Legislature has maintained and enacted statutes proscribing specific felony offenses involving conspiracy in criminal statutes located outside the Penal Code. Examples of those statutes can be found in the Alcoholic Beverage Code,[97] the Texas Free Enterprise and Antitrust Act of 1983,[98] the State Lottery Act,[99] and the Transportation Code,[100] as

rently codified at TEX. HEALTH & SAFETY CODE ANN. § 485.038 (Vernon 2003), Acts 2001, 77th Leg., ch. 1463, § 2, eff. Sept. 1, 2001).

94. Acts 2001, 77th Leg., ch. 1463, § 4, eff. Sept. 1, 2001; *see also* Acts 2001, 77th Leg., ch. 459, § 2, eff. Sept. 1, 2001.

95. TEX. ELEC.CODE ANN. § 1.018 (Vernon Supp. 2006), *added by* Acts 2003, 78th Leg., ch. 393, § 2, eff. Sept. 1, 2003.

96. *Moore v. State*, 868 S.W.2d 787, 790 (Tex. Crim.App.1993); *Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex.Crim.App.1992).

97. TEX. ALCO. BEV.CODE ANN. § 104.03 (Vernon 1995) (conspiracy; accepting unlawful benefit), Acts 1977, 65th Leg., ch. 194, § 1, eff. Sept. 1, 1977, (previously codified at TEX. PENAL AUX. LAWS art. 666–17(26) (Vernon 1974) (Acts 1949, 51st Leg.-ch. 543, § 7, eff. Oct. 4, 1949)); TEX. ALCO. BEV.CODE ANN. § 206.06 (Vernon 1995) (forgery or counterfeiting), Acts 1977, 65th Leg., ch. 194, § 1, eff. Sept. 1, 1977, (previously codified at TEX. PENAL AUX. LAWS art. 666–28 (Vernon 1974) (Acts 1937, 45th Leg., ch. 448, § 36, eff. Aug. 21, 1937)).

98. TEX. BUS. & COM.CODE ANN. § 15.05 (Vernon 2002) (unlawful acts), *amended by* Acts 1983, 68th Leg., ch. 519, § 1, eff. Aug. 29, 1983, (previously codified at TEX. BUS. & COM.CODE § 15.04(a) (Vernon Supp.1968), Acts 1967, 60th Leg., ch. 785, § 1, eff. Sept. 1, 1967); TEX. BUS. & COM.CODE ANN. § 15.22 (Vernon 2002) (criminal suits), *amended by* Acts 1983, 68th Leg., ch. 519, § 3, eff. Aug. 29, 1983) (previously codified at TEX. BUS. & COM.CODE § 15.33 (Vernon Supp.1968), Acts 1967, 60th Leg., ch. 785, § 1, eff. Sept. 1, 1967).

99. TEX. GOV'T CODE ANN. § 466.313 (Vernon 2004) (conspiracy), *added by* Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993; TEX. GOV'T CODE ANN. § 466.303 (Vernon 2004) (sale of ticket by unauthorized person), *added by* Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993; TEX. GOV'T CODE ANN. § 466.3054 (Vernon 2004) (group purchase arrangements), *added by* Acts 1995, 74th Leg., ch. 76, § 6.38, eff. Sept. 1, 1995; TEX. GOV'T CODE ANN. § 466.306 (Vernon 2004) (forgery; alteration of ticket), *added by* Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993; TEX. GOV'T CODE ANN. § 466.307 (Vernon 2004)

well as the statute defining the offense of sedition in the Government Code.[101] Additionally, from 1997 to 2005, Chapter 36 of the Human Resources Code, titled Medicaid Fraud Prevention, contained a provision prohibiting felony conspiracy. Subsection (9) of Section 36.002, which defines unlawful acts, states that it is unlawful for a person to "knowingly or intentionally enter[ ] into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program or a fiscal agent[.]"[102] Until it was repealed in 2005, Section 36.131, titled criminal offense, provided that an offense under Section 36.002 was subject to first-, second-, and third-degree-felony-level punishments based on

"the value of any payment or monetary or in-kind benefit provided under the Medicaid program, directly or indirectly, as a result of the unlawful act[.]"[103]

A survey of criminal statutes located outside of the Penal Code also reveals that the Legislature has retained and enacted statutes proscribing specific felony offenses involving attempt or amended existing statutes to include attempt. We have already cited to three of those statutes. Section 15.05(b) of the Business and Commerce Code makes it unlawful for a person to "attempt to monopolize" "any part of trade or commerce."[104] This offense is designated as a felony.[105] And the felony offense of sedition, found in Section 557.001(a) of the Government Code, includes attempt among the types of conduct

---

(influencing selection of winner), *added by* Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993; TEX. GOV'T CODE ANN. § 466.308 (Vernon 2004) (claiming lottery prize by fraud), *amended by* Acts 1995, 74th Leg., ch. 76, § 6.39, eff. Sept. 1, 1995, *added by* Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993; TEX. GOV'T CODE ANN. § 466.309 (Vernon 2004) (tampering with lottery equipment), *added by* Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993; TEX. GOV'T CODE ANN. § 466.310 (Vernon 2004) (certain transfers of claims), *added by* Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993.

**100.** TEX. TRANSP. CODE ANN. § 542.303(a) (Vernon 1999) (inchoate offenses applicable to offenses in subtitle C, which includes chapters 541–53), Acts 1995, 74th Leg., ch. 165, § 1, eff. Sept. 1, 1995, (previously codified at TEX.REV.CIV. STAT. § 145 (Vernon 1948) (parties to a crime), Acts 1947, 50th Leg., ch. 421, art. XVII, eff. Sept. 4, 1947); TEX. TRANSP. CODE ANN. § 548.603(b), (d) (Vernon 1999) (fictitious or counterfeit inspection certificate or insurance document) (offense defined in subsection (b) and text of subsection (d) designating offense in subsection (b) as either a third- or second-degree felony), *added by* Acts 1997, 75th Leg., ch. 1069, § 16, eff. June 19, 1997; TEX. TRANSP. CODE ANN. § 545.420(a), (g)-(h) (Vernon Supp.2006) (racing on highway) (subsections (g) and (h) making offense sub-

ject to either a third- or second-degree-felony punishment), *added by* Acts 2003, 78th Leg., ch. 535, § 1, Sept. 1, 2003, (previously codified at TEX.REV. CIV. STAT. art. 6701(d), § 185 (Vernon Supp.1972), *added by* Acts 1971, 62nd Leg., ch. 83, § 94, eff. Aug. 30, 1971).

**101.** TEX. GOV'T CODE ANN. § 557.001 (Vernon 2004), Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993, (previously codified at TEX.REV. CIV. STAT. art. 6889–3A, §§ 5(3) (unlawful acts), 6 (punishment for violations) (Vernon Supp.1956), Acts 1954, 53rd Leg., 1st C.S., ch. 3, eff. Apr. 15, 1954).

**102.** TEX. HUM. RES.CODE ANN. § 36.002(9) (Vernon 2001) (unlawful acts), *added by* Acts 1995, 74th Leg., ch. 824, § 1, eff. Sept. 1, 1995, *amended by* Acts 1997, 75th Leg., ch. 1153, § 4.03, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 233, § 4, eff. Sept. 1, 1999.

**103.** TEX. HUM. RES.CODE ANN. § 36.131(b)(5)-(7) (Vernon 2001) (criminal offense), *added by* Acts 1997, 75th Leg., ch. 1153, § 4.09, eff. Sept. 1, 1997, *repealed by* Acts 2005, 79th Leg., ch. 806, § 19, eff. Sept. 1, 2005.

**104.** TEX. BUS. & COM.CODE ANN. § 15.05(b); *see also* text accompanying note 98 *supra*.

**105.** TEX. BUS. & COM.CODE ANN. § 15.22(a); *see also* text accompanying note 98 *supra*.

prohibited by that statute.[106] Section 542.303 of the Transportation Code, which defines inchoate offenses, states that it is an offense to attempt to commit an offense defined in Subtitle C.[107] Two examples of offenses that are subject to felony punishment in Subtitle C include Subsection (b) of Section 548.603[108] and Section 545.420.[109]

Section 481.129(a)(5) of the Controlled Substances Act contains the most historically-noteworthy example.[110] In *Moore*, the appellant was charged with attempting to violate Section 4.09(a)(3) of the Controlled Substances Act,[111] the forerunner to Section 481.129(a)(5). At that time, Section 4.09(a)(3) stated that "[i]t is unlawful for any person knowingly or intentionally to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge[.]"[112] In 1978, before the Legislature made Title 4 directly applicable to certain offenses in the Controlled Substances Act in 1981,[113] the 66th Legislature added "attempt to acquire or obtain" to Section 4.09(a)(3).[114] This amendment was clearly a direct response to *Moore*. Even though this provision was subsequently amended and moved[115] and the Legislature expanded the scope of offenses that Penal Code Title 4 applies to in the Controlled Substances Act in 1995,[116] the current version of the statute still includes attempt.[117]

Other examples of statutes prohibiting criminal attempt are located in the Election Code,[118] the State Lottery Act,[119] the

**106.** Tex. Gov't Code Ann. § 557.001(a)-(b); *see also* text accompanying note 101 *supra*.

**107.** Tex. Transp. Code Ann. § 542.303(a); *see also* text accompanying note 100 *supra*.

**108.** Tex. Transp. Code Ann. § 548.603(b), (d); *see also* text accompanying note 100 *supra*.

**109.** Tex. Transp. Code Ann. § 545.420(a), (g)-(h); *see also* text accompanying note 100 *supra*.

**110.** Tex. Health & Safety Code Ann. § 481.129(a)(5), (d) (Vernon 2003) (offense: fraud), *amended by* Acts 2001, 77th Leg., ch. 251, § 23, eff. Sept. 1, 2001, (previously codified at Tex. Health & Safety Code § 481.129(a)(4) (Vernon 1990), *added by* Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989); Tex.Rev.Civ. Stat. art. 4476–15, § 4.09(a)(3) (Vernon Supp.1986), *amended by* Acts 1985, 69th Leg., § 11, eff. Sept. 1, 1985; Tex.Rev.Civ. Stat. art. 4476–15, § 4.09(a)(3), (b) (Vernon Supp.1979), *amended by* Acts 1978, 66th Leg., ch. 90, § 6, eff. May 2, 1979.

**111.** 545 S.W.2d at 141.

**112.** Tex.Rev.Civ. Stat. art. 4476–15, § 4.09(a)(3) (Vernon 1974).

**113.** Acts 1981, 67th Leg., ch. 268, § 2, eff. Sept. 1, 1981.

**114.** Tex.Rev.Civ. Stat. art. 4476–15, § 4.09(a)(3) (Vernon Supp.1979), *amended by* Acts 1979, 66th Leg., ch. 90, § 6, eff. May 2, 1979; *see also Ex parte Holbrook*, 609 S.W.2d 541, 542 (Tex.Crim.App.1980) (observing that Section "4.09(a)(3) of the Act was amended in 1979 to specifically include the 'attempt to acquire or obtain possession of a controlled substance' in the description of offenses under that section.").

**115.** Acts 1985, 69th Leg., ch. 227, § 10, eff. Sept. 1, 1985; Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989; Acts 2001, 77th Leg., ch. 251, § 23, eff. Sept. 1, 2001.

**116.** Acts 1995, 74th Leg., ch. 318, § 36, eff. Sept. 1, 1995.

**117.** Tex. Health & Safety Code Ann. § 481.129(a)(5) (Vernon 2003).

**118.** Tex. Elec.Code Ann. § 2.054 (Vernon 2003) (coercion against candidacy prohibited), *added by* Acts 1995, 74th Leg., ch. 667, § 1, eff. Sept. 1, 1995.

**119.** Tex. Gov't Code Ann. § 466.307 (Vernon 2004) (influencing selection of winner), *added by* Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993, (previously codified at Tex.Rev.Civ. Stat. art. 179g, § 4.03(a)(2), (b) (Vernon Supp.1992), *added by* Acts 1991,

Government Code,[120] Title 3, Chapter 195 of the Health and Safety Code,[121] and the Occupations Code.[122]

Taken together, these legislative acts establish that, over the course of the past thirty years, the Legislature has repeatedly approved of our interpretation of Section 1.03(b) of the Penal Code that was rendered in *Moore* and *Baker*. From this we conclude that our prior construction of Section 1.03(b) is correct. Overruling that construction now would be unjustified; we would impermissibly launch ourselves into the role of super-legislators, disturbing the State's legislatively-established penal laws.

Adhering to our prior decisions, we hold that Section 1.03(b) controls the application of Penal Code provisions to criminal offenses defined outside the Penal Code. It directs the export of the provisions contained only in Titles 1, 2, and 3 of the Penal Code to criminal offenses defined outside the Penal Code and contemporaneously bars the import of extra-Penal Code offenses to offenses defined in Titles 4 through 11 of the Penal Code. The offenses defined in Title 4 of the Penal Code

72nd Leg., 1st C.S., ch. 6, § 2, eff. Nov. 5, 1991); Tex. Gov't Code Ann. § 466.308 (Vernon 2004) (claiming lottery prize by fraud) (subsections (b) and (c)(1), (2), *amended by* Acts 1995, 74th Leg., ch. 76, § 6.39, eff. Sept. 1, 1995), *added by* Acts 1993, 73rd Leg., ch. 107, § 4.03(b), eff. Aug. 30, 1993, (previously codified at Tex.Rev.Civ. Stat. art. 179g, § 4.03(c), (d) (Vernon Supp.1992), *added by* Acts 1991, 72nd Leg., 1st C.S., ch. 6, § 2, eff. Nov. 5, 1991).

**120.** Tex. Gov't Code Ann. § 557.011 (Vernon 2004) (sabotage), *added by* Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993, (previously codified at Tex.Rev.Civ. Stat. art. 6889–3, § 5 (Vernon Supp.1952), Acts 1951, 52nd Leg., ch. 8, eff. Feb. 27, 1951); Tex. Gov't Code Ann. § 557.012 (Vernon 2004) (capital sabotage), *added by* Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993, (previously codified at Tex.Rev.Civ. Stat. art. 6889–3, § 5 (Vernon Supp.1952), Acts 1951, 52nd Leg., ch. 8, eff. Feb. 27, 1951); Tex. Gov't Code Ann. § 821.101(b) (Vernon 2004) (conversion of funds; fraud), *amended by* Acts 1989, 71st Leg., ch. 179, § 1, eff. Sept. 1, 1989, (previously codified at Tex.Rev.Civ. Stat. tit. 110B, § 31.101 (Vernon Supp.1984), Acts 1981, 67th Leg., ch. 453, § 1, eff. Sept. 1, 1981; Tex.Rev.Civ. Stat. art. 2922–1.06 (Vernon Supp.1970), Acts 1969, 61st Leg., ch. 41, § 1, eff. Mar. 31, 1969). *But see* Tex.Rev.Civ. Stat. art. 2922–1, § 10 (Vernon Supp.1950), Acts 1949, 51st Leg., ch. 139, art. IX, eff. May 10, 1949.

**121.** Tex. Health & Safety Code Ann. § 195.003(d), (f) (Vernon 2001) (false records), *added by* Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989, *amended by* Acts 1991, 72nd Leg., 1st C.S., ch. 15, § 5.15, eff. Sept. 1, 1991, (previously codified at Tex.Rev. Civ. Stat. art. 4477c, § 2(a)(3), (b) (Vernon Supp.1979), Acts 1979, 66th Leg., ch. 146, § 1, eff. May 11, 1979, *repealed by* Acts 1989, 71st Leg., ch. 678, § 13; Tex.Rev.Civ. Stat. art. 4477c (Vernon 1974), Acts 1973, 63rd Leg., ch. 367, § 2, eff. June 12, 1973; Tex. Penal Code art. 781(a) (Vernon 1936)).

**122.** Tex. Occ.Code Ann. § 2153.357 (Vernon 2004) (criminal offense; obtaining license by fraud), *added by* Acts 1999, 76th Leg., ch. 388, § 1, eff. Sept. 1, 1999, (previously codified at Tex.Rev.Civ. Stat. art. 8817, § 8(2) (Vernon Supp.1993), Acts 1993, 73rd Leg., ch. 486, § 1.15, eff. Sept. 1, 1993; Tex.Rev.Civ. Stat. art. 8817, § 8(2) (Vernon Supp.1990) (adding attempt), Acts 1989, 71st Leg., ch. 1096, § 14, eff. Sept. 1, 1989; Tex.Rev.Civ. Stat. art. 8817, § 8(2) (Vernon 1984), Acts 1981, 67th Leg., ch. 389, §§ 33, 39, eff. Jan. 1, 1982; Tex.Rev.Civ. Stat., Title 122A, Taxation—General, art. 13.17, § 8(6) (Vernon Supp.1970), Acts 1969, 61st Leg., ch. 497, § 1, eff. Sept. 1, 1969); Tex. Occ.Code Ann. § 2153.359(a)(2), (b) (Vernon 2004) (criminal offense; prohibited transactions), *added by* Acts 1999, 76th Leg., ch. 388, § 1, eff. Sept. 1.1999 (previously codified at Tex.Rev.Civ. Stat. art. 8817, § 26(1)-(3) (Vernon 1984), Acts 1981, 67th Leg., ch. 389, §§ 33, 39, eff. Jan. 1, 1982; Acts 1981, 67th Leg., ch. 770, § 7, eff. Sept. 1, 1981; Tex.Rev.Civ. Stat., Title 122A, Taxation—General, art. 13.17, § 27(4) (Vernon Supp.1970), Acts 1969, 61st Leg., ch. 497, § 1, eff. Sept. 1, 1969).

apply to offenses defined outside the Penal Code only where the Legislature has designated that Title 4 is applicable via legislative action like the amendments made to the Controlled Substances Act, the Simulated Controlled Substances Act, the Dangerous Drugs Act, the Abusable and Volatile Chemicals Act, and the Election Code. Because Title 4 of the Penal Code, and therefore the Penal Code's criminal conspiracy statute, did not apply to offenses defined in the Election Code prior to the inclusion of Section 1.018 to the Election Code in 2003, the court of appeals did not err in affirming the trial judge's decision to quash the Election Code-based conspiracy charges against Colyandro, Ellis, and Delay.

### III.  Conclusion

Having determined that our holdings in *Moore* and *Baker* cannot be restricted to offenses defined in the Controlled Substances Act and that our interpretation of Section 1.03(b) of the Penal Code in those cases was correct, we affirm the judgment of the Third Court of Appeals upholding the trial judge's decision to quash the Election Code-based conspiracy charges against Colyandro, Ellis, and Delay.

KELLER, P.J., filed a concurring opinion in which PRICE, J., joined.

PRICE, J., filed a concurring opinion.

COCHRAN, J., filed a dissenting opinion in which MEYERS, JOHNSON, and HOLCOMB, JJ., joined.

KELLER, P.J., concurring in which PRICE, J., joined.

The dissenting opinion contends that we should overrule *Moore v. State*[1] and *Baker*

v. State.[2]  But *Moore* and *Baker* are judicial interpretations of statutes involving substantive penal law.  The interests underlying the doctrine of *stare decisis* are at their height for such interpretations because parties rely upon them for guidance in attempting to obey the law.[3]  The Court's opinion meticulously details the legislature's piecemeal response to the interpretive gloss announced in *Baker* and *Moore.*  Instead of altering the Penal Code to extend the Title 4 inchoate offense provisions generally to offenses outside the Code, the legislature has chosen to amend various non-Penal Code provisions on an *ad hoc* basis to allow for Title 4's application.  As the dissent points out, the legislature could have chosen to amend Penal Code § 1.03 in response to *Baker* and *Moore,* but it did not.  Or the legislature could have amended Title 4 to make it expressly applicable to all criminal offenses outside the Penal Code.  Again, it did not.  The dissent suggests that neither of these actions would solve what it perceives to be other problems created by the *Baker/Moore* construction.  Perhaps not, but an amendment to Title 1 or Title 4 of the Penal Code would have effectively extended the inchoate offense provisions to all criminal offenses outside the Penal Code if that is indeed what the legislature wanted.

The dissent also suggests that a legislative fix might have unintended consequences.  But that is a reason for this Court to refrain from creating a "judicial fix" to change the legal interpretation expounded in *Baker* and *Moore.*  It is not the least bit absurd to conclude that the legislature may have intended to limit the application of the inchoate offense provisions to certain felonies as opposed to

---

1.  545 S.W.2d 140 (Tex.Crim.App.1976)

2.  547 S.W.2d 627 (Tex.Crim.App.1977).

3.  *Busby v. State,* 990 S.W.2d 263, 267 (Tex. Crim.App.1999).

globally applying it. The legislature may have believed that global application could have unintended consequences.

Finally, even if the dissent were correct in concluding that *Baker* and *Moore* should be overruled, the new interpretation could not be applied to these defendants. Due process prohibits a court from retroactively applying a more expansive interpretation of a criminal offense provision that is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue."[4] *Baker* and *Moore* were the law at the time the defendants engaged in the conduct for which they were indicted. Retroactive application of a contrary and more expansive interpretation of the conspiracy statute would violate the defendants' right to fair warning of what constitutes criminal behavior.[5]

With these comments, I join the Court's opinion.

PRICE, J., concurring.

For the reasons expressed in Judge Keasler's opinion for the Court, and in Presiding Judge Keller's concurring opinion, I agree that we should not presently overrule the opinions in *Moore v. State* and *Baker v. State*.[1] The Court's opinion convincingly demonstrates the legislative ratification of the construction of the statutory scheme that those cases endorsed. And as Judge Keller demonstrates, to apply a new interpretation of the statutory regime retroactively to these appellees to their detriment would, in any event, violate due process. I therefore join the Court's opinion, as well as the Presiding Judge's concurring opinion (which also joins the Court's opinion).

Were we writing on the proverbial pristine slate, construing the statutory scheme for the first time, I would be persuaded by Judge Cochran's dissenting opinion to a different view. She makes a compelling argument why *Moore* and *Baker* were wrongly decided. But, in the final analysis, it should take more than an argument, however compelling, that precedent (and especially, as here, legislatively ratified precedent) is wrong to justify overruling it, consistent with principles of *stare decisis*. This is especially true, as the Presiding Judge points out, with respect to precedent construing penal provisions, in which context the necessity for notice and predictability is paramount. The holdings of *Moore* and *Baker* are not so unreasonable or outlandish that we should have expected these appellees to realize that they could not rely upon them in gauging the lawfulness of their conduct.[2]

Having said that, I would not rule out the possibility that, on some future occasion, the Court might justifiably overrule these questionable precedents. Our various opinions in the present cases should arguably serve to notify the public that future reliance upon the holdings of *Moore* and *Baker* to justify engaging in a conspiracy to commit a felony not enumerated in the Penal Code would be, at best, unwise.

---

**4.** *Rogers v. Tennessee,* 532 U.S. 451, 457, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001)(quoting *Bouie v. City of Columbia,* 378 U.S. 347, 352, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)).

**5.** *Id.*

**1.** *Moore v. State,* 545 S.W.2d 140 (Tex.Crim. App.1976); *Baker v. State,* 547 S.W.2d 627 (Tex.Crim.App.1977).

**2.** *See Ex parte Lewis,* 219 S.W.3d 335, 380 (Tex.Crim.App.2007) (Price, J., dissenting) (prior precedent not so "unreasonable" or "outlandish" as to justify overruling it just because a present majority of the Court perceives it to be wrong).

Sometimes the overruling of questionable precedent involves a "two-stage ... process."[3]

With these additional comments, I join the Court's opinion.

COCHRAN, J., dissenting, in which MEYERS, JOHNSON and HOLCOMB, JJ., joined.

I respectfully dissent.

In this case we are asked if any and all felony offenses, whether defined in the Penal Code or in some other Texas statute, may form the basis of a conspiracy charge under Section 15.02 of the Penal Code. Were it not for two wayward 1976 and 1977 opinions written by Commissioner Davis over the strong dissent of Judge Douglas, the answer to this question would

be obvious. Yes, any felony offense is subject to the Penal Code conspiracy provision. Thus, a person may be prosecuted for conspiring to commit any felony offense, whether that felony is defined in the Penal Code or elsewhere in Texas law. The plain language of the conspiracy statute requires this result. The structure, legislative intent, and history of the 1974 Penal Code all require this result. Common sense requires this result. Public policy requires this result. Only two poorly reasoned opinions from the mid 1970s, *Moore v. State*[1] and *Baker v. State*,[2] stand in the way of reaching the right result. The Third Court of Appeals, in its opinion in the present cases, invited us to re-visit the reasoning of those two cases and suggested that we should overrule them.[3] I

---

**3.** *See* Annotation, *Prospective or Retroactive Operation of Overruling Decision*, 10 A.L.R.3d 1371, §§ 7[a] & [b], at 1393 & 1396 (1966) ("[I]t is now generally recognized that a court has the power ... to overrule a case purely prospectively and give the overruling decision no retroactive effect whatsoever, that is, to hold that the rule established by the overruling decision will operate only upon future transactions or events and will not even be operative upon the parties to the overruling case.") ("It appears true that a judicial statement purporting to 'overrule' a case wholly prospectively is in fact no more than a dictum, since it is, by hypothesis, inapplicable to the parties or the controversy before the court. However, especially where there has been strong reliance on an earlier decision, the most equitable way of overturning the earlier decision may be to hold that the parties to a particular case are to have their rights governed by the earlier decision, but to warn, by means of dictum, that anyone who subsequently relies upon the earlier decision—after the date of the court's opinion or after some other date specified by the court— will be doing so at his peril. * * * If a person subsequently attempts to rely on an earlier decision despite such a warning against further reliance, the court, in deciding that person's case, can conclude that reliance after the date specified in the warning was unjustified, and the court can then declare, as a

holding rather than as dictum, that the earlier decision is overruled. Thus, by using a two-stage overruling process, consisting first of a warning in the form of a dictum and secondly, if necessary, of a holding overruling an earlier decision, the court can achieve a desirable effect by changing a bad rule without defeating any strong reliance interests.").

**1.** 545 S.W.2d 140 (Tex.Crim.App.1976).

**2.** 547 S.W.2d 627 (Tex.Crim.App.1977).

**3.** *State v. DeLay*, 208 S.W.3d 603, 607 (Tex. App.-Austin 2006). The court of appeals stated:

As an intermediate appellate court, we lack the authority to overrule an opinion of the court of criminal appeals. It is the prerogative of the court of criminal appeals alone to overrule its interpretation of a statute. *Baker* appears to be based on questionable reasoning and is arguably in conflict with the history of the criminal conspiracy offense in Texas as well as the growing legislative trend to propagate felony offenses throughout the various statutory codes. The court of criminal appeals may want to revisit its opinion in *Baker*. But until that time, *Baker* is the law and we are not free to disregard it.

*Id.* (citations omitted).

would accept that invitation and overrule *Moore* and *Baker*. Not only are they poorly reasoned, but they carry the potential to cause untold mischief to many other provisions in the Penal Code.

## A. The Plain Language of the Penal Code Conspiracy Statute.

In construing the meaning of any statute, we look first to the plain language of that statute.[4] This Court's interpretation of statutes must "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation."[5] In *Boykin*, we established that if the literal text of the statute is clear and unambiguous, we must ordinarily give effect to that plain meaning.[6] The first rule of statutory construction is to presume that the legislature meant what it said and said what it meant.[7] On its face, the conspiracy statute plainly applies to all felony offenses.

Section 15.02 of the Penal Code defines the criminal offense of conspiracy:

(a) A person commits criminal conspiracy if, with the intent that a felony be committed:

(1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and

(2) he or one or more of them performs an overt act in pursuance of the agreement.[8]

There is absolutely nothing in the plain language of this statute that states or suggests that the Legislature really meant "a felony defined in the Penal Code" when it said "a felony" in defining the offense of conspiracy. In normal English usage, the phrase "a felony" means "any felony." Under *Boykin*, our statutory analysis should end right there.

Is there anything else in the Penal Code that states or suggests that the phrase "a felony" in the conspiracy statute really means "a felony defined in the Penal Code"? No, quite the reverse. Section 1.07 of the Penal Code, the provision that sets out the definitions of words that are used in the Penal Code, states:

(a) In this Code:

(23) "Felony" means an offense so designated by law or punishable by death or confinement in a penitentiary.[9]

Under normal rules of English construction, any time the word "felony" is used in the Penal Code, it means any offense that is titled or listed as a "felony" regardless of whether that felony is defined in the Penal Code or some other statute. Once again, under *Boykin*, our statutory analysis should end right there.

The Election Code provisions dealing with illegal contributions that Messieurs DeLay, Colyandro, and Ellis are charged with having conspired to violate are all third-degree felonies.[10] It would seem

---

**4.** *Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex.Crim.App.1991).

**5.** *Id.* at 785.

**6.** *Id.*

**7.** *Id.* ("Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute."); *see also Seals v. State*, 187 S.W.3d 417, 420 (Tex.Crim.App.2005); *Getts v. State*,

155 S.W.3d 153, 155 (Tex.Crim.App.2005) (stating that *Boykin* "instructs us to first 'focus our attention on the literal text of the statute in question' because 'the text of the statute is the law.' ").

**8.** Tex. Penal Code § 15.02(a).

**9.** *Id.* § 1.07(a)(23).

**10.** Tex. Elec.Code § 253.003(e) (third-degree felony to make or accept an unlawful political contribution in violation of Subchapter D

quite obvious, then, that they may be prosecuted for the offense of conspiracy to commit the third-degree felony of violating the illegal contributions provisions of the Election Code. That should be the end of the matter.

## B. The Structure, Legislative Intent, and History of the Penal Code Conspiracy Statute.

Messieurs Delay, Colyandro, and Ellis argue (as did Commissioner Davis in *Moore* and *Baker*) that we cannot follow the plain language of the conspiracy statute or the definition of "a felony" in section 1.07 because section 1.03(b) of the Penal Code forbids us from using felonies defined outside the Penal Code as the basis for a conspiracy offense. Section 1.03(b) says no such thing. Nor does it imply any such thing. But to counter that argument one must examine the basic structure of the Penal Code.

The Penal Code is divided into eleven titles.[11] The first three titles set out general provisions which apply to any and all criminal offenses.[12] The rest of the titles—Title 4 through Title 11—define specific criminal offenses. For example, the offense of conspiracy is defined in Title 4; the offense of capital murder is defined in Title 5; the offense of bigamy is defined in Title 6; and so forth. Thus, there are two entirely different portions of the Penal Code: generalities in the first three titles, specific offenses in the rest.

Section 1.03 of the Penal Code is captioned "Effect of Code." Subsection (b) reads:

> The provisions of Titles 1, 2, and 3 apply to offenses defined by other laws, unless the statute defining the offense provides otherwise; however, the punishment affixed to an offense defined outside this code shall be applicable unless the punishment is classified in accordance with this code.[13]

This subsection ensures that the general statutory provisions of the Penal Code, such as the defenses to or justifications excluding criminal responsibility (self-defense, insanity, necessity, duress, etc.), party liability for criminal offenses (accomplice liability), and criminal responsibility of a corporation, apply not only to the criminal offenses defined within the Penal Code but to all criminal offenses defined in other Texas statutes. It is an "export" provision: one can cut and paste these three titles onto each and every criminal offense defined outside the Penal Code unless the extra-Penal Code crime statute

which prohibits certain contributions by corporations or labor unions); TEX. ELEC.CODE § 253.094(c) (third-degree felony for a corporation or labor union to make an unauthorized political contribution); TEX. ELEC.CODE § 253.104 (third-degree felony for a corporation or labor union to knowingly make an otherwise authorized political contribution in violation of 60–days before election rule).

11. Title 1 (Introductory Provisions); Title 2 (General Principles of Criminal Responsibility); Title 3 (Punishments); Title 4 (Inchoate Offenses); Title 5 (Offenses Against the Person); Title 6 (Offenses Against the Family); Title 7 (Offenses Against Property); Title 8 (Offenses Against Public Administration); Ti-

tle 9 (Offenses Against Public Order and Decency); Title 10 (Offenses Against Public Health, Safety, and Morals); Title 11 (Organized Crime).

12. For example, Title 1 contains chapters dealing with the general provisions of the code, the burden of proof, and multiple prosecutions. Title 2 contains chapters dealing with culpability generally, criminal responsibility for the conduct of another, general defenses to criminal responsibility, and justifications excluding criminal responsibility. Title 3 sets out the punishments that apply to criminal offenses.

13. TEX. PENAL CODE § 1.03(b).

specifically says otherwise.[14] There is no need to repeat all of these general principles in each and every code that defines a criminal offense. Just export and overlay these three titles onto those provisions.

Messieurs Delay, Colyandro, and Ellis argue that because section 1.03(b) does not mention Title 4, in which the crime of conspiracy is defined, that crime of conspiracy cannot be "exported" and applied to other crimes defined outside the Penal Code. Well, of course not. The crime of conspiracy is a distinct and specific criminal offense, just like murder, burglary, kidnaping, theft, and so forth. It is not a part of the general provisions of the Penal Code applicable to all crimes; it is a specific crime itself.

It would make no sense to say, in section 1.03(b), that the general provisions of Titles 1, 2, and 3, as well as Titles 4–11 defining specific crimes, apply to offenses defined by other laws. Commissioner Davis back in 1976 and 1977 made a grievous, but understandable, mistake. In *Baker*, he apparently thought that the specific crime of conspiracy was really a general principle provision [15] that could, if the Legislature had so desired, float around and attach itself to other crimes defined outside the Penal Code. It cannot. The crime of conspiracy, like the crimes of murder, burglary, and kidnaping, is firmly anchored in the Penal Code. One cannot "export" it to other crimes.

But what the conspiracy statute explicitly requires one to do is "import" any felony—whether defined as a felony inside or outside the Penal Code—into the crime of conspiracy. When a crime defined in the Penal Code has, as part of its basis, "a felony," then, under the explicit definition of a "felony" under section 1.07(a)(23), one may cut and paste any felony crime defined in any Texas statute into that specific Penal Code offense. That is what section 1.07(a)(23) requires. For example, the crime of conspiracy requires that the person act "with intent that a felony be committed," that he agrees with at least one other person that one of them will commit the felony offense, and that one of them performs an overt act in furtherance of their agreement.[16] As another example, the crime of felony-murder requires the person to commit or attempt to commit a felony (*any* felony other than manslaughter) and in the course of and in furtherance of committing that felony commit an act clearly dangerous to human life that causes the death of a person.[17] Another example: burglary is the crime of entering another's home without the consent of the

---

**14.** The Practice Commentary to Section 1.03 of the 1974 Penal Code states:

> The general principles of penal law, for the first time and for the most part comprehensively treated and codified by this code, are designed to provide a framework for the interpretation and application of every law now in effect or later enacted that employs a penal sanction, whether or not it is located in this code.

Tex. Penal Code § 1.03, Practice Commentary.

**15.** In *Baker*, Commissioner Davis may have confused the distinct crime of conspiracy (defined in section 15.02) with the concept of criminal responsibility based upon conspiracy complicity (which is set out in section

7.02(b)). Conspiratorial liability is, of course, contained within Title 2, and it is one of those general provisions of the Penal Code that, under the explicit wording of section 1.03(b), applies to all criminal offenses, regardless of whether those offenses are contained in the Penal Code or another Texas law. But there is an enormous difference between criminal responsibility for the conduct of another under general party liability principles and the commission of the distinct crime of conspiracy. They frequently are, but should not be, confused.

**16.** Tex. Penal Code § 15.02(a).

**17.** Tex. Penal Code § 19.02(b)(3).

homeowner and with the intent to commit a felony (any felony), theft, or assault.[18] One last example:[19] aggravated kidnaping is the crime of abducting a person with the intent to "facilitate the commission of a felony or flight after the attempt or commission of a felony."[20]

Following the logic of *Baker*, it would not be a crime to abduct a person with the intent to facilitate the commission of a felony that is defined outside the Penal Code because Title 5 (which contains the definition of the crime of aggravated kidnaping) is not mentioned in section 1.03(b) as being applicable to offenses defined outside the Penal Code. This is an absurd result and surely not one intended by the Legislature when it enacted the 1974 Penal Code. In all of these examples, the Legislature obviously meant "any felony" when it used the phrase "a felony." Especially since the definition of a "felony" in section 1.07(a)(23) says exactly that. How much clearer can or should the Legislature be? Section 1.03(b) does not reference any of the Penal Code titles in which these offenses are defined as applying outside the Penal Code and indeed these offenses do not apply outside the Penal Code. But felony offenses that are defined outside the Penal Code surely may be imported into the specific Penal Code crimes that require the commission of "a felony" as part of that crime's definition.

Does the history of the 1974 Penal Code support the notion that only those felonies defined within the Penal Code may be the basis for the crime of conspiracy? No. The Committee Comment to the Final Draft of the Proposed Texas Penal Code explained that the purpose of section 15.02, defining the crime of conspiracy, was to clarify the existing law against criminal conspiracy. It stated:

> Criminal conspiracy, a common-law crime, has become firmly established as an offense that serves dual roles in modern criminal jurisprudence. Functioning as an inchoate offense, criminal conspiracy fixes the point of legal intervention at agreement to commit a crime coupled with an overt act. Thus, it reaches further back into preparatory conduct than criminal attempt, Section 15.01, but not as far back as criminal solicitation, Section 15.03. In its second role criminal conspiracy provides a means of striking against the special danger incident to group criminal activity and facilitates prosecution of the group by providing extraordinary evidentiary and procedural advantages. *Section 15.02 is essentially a clarification of the present Texas law of conspiracy, Penal Code arts. 1622–1629*, emphasizing the inchoate aspect of the offense without interfering with the procedural and evidentiary advantages of the group prosecution aspect of the offense.[21]

Under the common law, the crime of conspiracy applied to *any* criminal offense, felony or misdemeanor.[22] Indeed, the gen-

---

18. TEX. PENAL CODE § 30.02(a)(1).

19. Other Penal Code provisions that refer to "a felony" as part of the definition of the crime include enticing a child (TEX. PENAL CODE § 25.04(b)); burglary of a motor vehicle (TEX. PENAL CODE § 30.04(a)); coercion of a public servant (TEX. PENAL CODE § 36.03(b)); hindering apprehension (TEX. PENAL CODE § 38.05(c)); escape (TEX. PENAL CODE

§ 38.06(c)(1)); bail jumping (TEX. PENAL CODE § 38.10(f)).

20. TEX. PENAL CODE § 20.04(a)(3).

21. TEXAS PENAL CODE, A PROPOSED REVISION, FINAL DRAFT, October 1970, § 15.02, committee comment (emphasis added).

22. *See* Charles P. Bubany, *The Texas Penal Code of 1974*, 28 Sw. L.J. 292, 327 & n. 193

eral conspiracy law in Texas had been on the books since 1884, but it applied only to felony offenses: "The agreement to come within the definition of conspiracy must be to commit one or more of the following offenses, to-wit: Murder, robbery, arson, burglary, rape *or any other offense of the grade of felony.*"[23] And, at least as far back as the 1925 Penal Code, the offense of illegal contributions made by corporations was punishable as a felony.[24] This provision was transferred to the Election Code of 1951.[25] If the crime of making an illegal corporate political contribution was amenable to forming the basis of a conspiracy offense up until the enactment of the 1974 Penal Code, and if the 1974 Penal Code merely clarified the then-existing law of conspiracy, it defies common sense to think that the Legislature intended to wipe out that offense when it enacted the general crime of conspiracy in section 15.02.

## C. Common Sense and Public Policy Considerations.

Is there any common-sense reason to think that the crime of conspiracy does or should apply only to offenses defined within the Penal Code itself? If the purpose of the conspiracy law is to deter and punish those who agree to commit a serious crime and take overt steps to accomplish that crime, is there any reason to separate out serious offenses defined within the Penal Code from serious offenses defined outside the Penal Code and declare that one can be prosecuted for conspiring to commit Penal Code felonies but not extra-Penal Code felonies?[26] Are some felonies more

(1974) (stating that section 15.02 "is limited to conspiracies that contemplate the commission of a felony" and noting that "[a]t common law, a combination for the purpose of committing any crime or a lawful act by unlawful means could be a conspiracy. Prior Texas law contained the felony limitation with certain exceptions").

**23.** TEXAS PENAL CODE art. 957 (1884).

**24.** TEXAS PENAL CODE art. 213 (1925) (prohibiting political contributions by any bank or corporation "for the purpose of aiding or defeating the election of any candidate for the office of Representative in Congress, or Presidential or Vice–Presidential Electors from this State, or any candidate for any State, district, county or precinct office in this State, or the success or defeat of any political measure submitted to a vote of the people of this State"; punishment included imprisonment "in the penitentiary not less than two nor more than five years").

**25.** TEXAS ELECTION CODE art. 213 (Texas Sess. Laws 1951, 52nd Reg. Leg. ch. 492, 1097, 1190 (1951)) (stating that corporations may not give, lend, or pay any money "directly or indirectly to any candidate, campaign manager, assistant campaign manager, or any other person, for the purpose of aiding or defeating the election of any candidate or of aiding or

defeating the approval of any political measure submitted to a vote of the people of this State or any subdivision thereof"; punishment included imprisonment of not less than one nor more than five years).

**26.** As the court of appeals aptly noted in its opinion in this case,

the legislature has created dozens of felony offenses contained in at least twenty statutory codes. In light of the historically broad application of Texas's criminal conspiracy offense, we find it unlikely that the legislature would have intended to eliminate criminal liability for conspiracy in such a panoply of felony offenses.

208 S.W.3d at 606. The court then listed some of the codes that contain felony offenses: TEX. AGRIC. CODE § 14.072(b); TEX. ALCO. BEV.CODE § 54.12; TEX. BUS. & COM.CODE § 35.54(d); TEX. EDUC.CODE § 37.125(b); TEX. ELEC.CODE § 253.094(c); TEX. FAM.CODE § 261.107(a); TEX. FIN.CODE § 33.108(c); TEX. GOV'T CODE § 302.034; TEX. HEALTH & SAFETY CODE § 481.141(b); TEX. HUM. RES.CODE § 35.012(b); TEX. INS.CODE § 101.106; TEX. LAB.CODE § 418.001(b); TEX. LOC. GOV'T CODE § 392.043(d); TEX. NAT. RES.CODE § 85.389(b); TEX. OCC.CODE § 204.352(b); TEX. PARKS & WILD. CODE § 66.119(d); TEX. TAX CODE § 152.101(b); TEX. TRANSP. CODE § 501.151(c); TEX. UTIL.CODE § 105.024(b); TEX. WATER CODE § 7.155(c).

felonious than other felonies? More deserving of being deterred and punished before their actual commission? Or are felonies defined in the Penal Code especially heinous "felonies-on-steroids," while their brethren defined outside the Penal Code are puny, half-pint felonies unworthy of being the subject of the crime of conspiracy?

I do not think so. There is certainly no reason in either the Penal Code or other legislative enactments to believe that the Texas Legislature has categorized felonies into first-class Penal Code felonies and second-class extra-Penal Code felonies with the first group capable of being the basis for the crime of conspiracy while the second group is not.

One might argue that if the Legislature thought that these extra-Penal Code offenses were "real" felonies deserving of being used as the basis of a conspiracy, felony-murder, burglary, kidnaping, hindering apprehension, or other Penal Code crimes that reference "a felony," then it should have placed them in the Penal Code itself. Maybe it should create a Title 12 section of the Penal Code to contain this miscellany of felony offenses described in twenty or more other codes. Good public policy suggests, however, that these extra-Penal Code offenses are defined in those separate codes because people who are most directly affected by those separate codes would be most likely to find and read them and then conform their conduct to avoid these crimes. For example, the Agriculture Code states that it is a felony for anyone to operate a public grain warehouse without first obtaining a license.[27] This offense is defined in Chapter 14 titled "Regulation of Public Grain Warehouse Operators." This is the proper place for it to be located as it applies only to those who operate public grain warehouses and they are the persons most likely to read this portion of the Agriculture Code and be placed on notice of the existence of this offense. It is most unlikely to think that public grain warehouse operators would go flipping through the Penal Code to see if that code contained any penal provisions relating to their business. The same logic applies to the felony offense of exhibiting a firearm that interferes with the normal use of a school building or bus that is contained in the Education Code,[28] or the felony offense of tampering with an oil or gas well that is contained in the Natural Resources Code,[29] or the felony offense of signing a false statement or affidavit dealing with the payment of taxes on car sales that is set out in the Transportation Code.[30]

Messieurs DeLay, Colyandro, and Ellis would have us believe that the Legislature intended to make it perfectly legal to conspire to commit all of these felonies, but illegal only to actually carry them out. On the contrary, it strains credulity to think that the Legislature intended that persons who conspired to commit these felonies are immune from prosecution for that conspiracy. In fact, some extra-Penal Code offenses are particularly susceptible to the crime of conspiracy and are doubly dangerous because of it. Take, for example, Mr. Big, a drug cartel kingpin who never sullies his own hands with the ten kilos of cocaine that he orders flown across the border into Texas. Instead, he conspires with his henchmen to deliver the goods while he is happily ensconced in his River Oaks mansion. Did the 1974 Penal Code really intend that he be immune from

---

27. TEX. AGRIC. CODE § 14.072(b).

28. TEX. EDUC.CODE § 37.125(b).

29. TEX. NAT. RES.CODE § 85.389

30. TEX. TAX CODE § 152.101(b).

prosecution for the Penal Code offense of conspiracy to deliver cocaine merely because the offense of delivery of cocaine was defined outside the Penal Code? The Legislature intended that the little mule who actually delivers a kilo of cocaine may go to prison for life while the kingpin who conspired (unsuccessfully, for that is what an inchoate crime is-one that is not completed) to get the cocaine into the hands of the mule is immune from prosecution? I think not.[31]

Thus, both common sense and good public policy lead to the conclusion that sections 1.07(a)(23) and 15.02 state that "a felony" is "any felony" regardless of whether it is defined in the Penal Code or in some other statute and that all such felonies may form the basis of a conspiracy offense. And if all such felonies are "real" felonies, so is the Election Code felony of making an illegal contribution and it, too, may form the basis of a conspiracy offense. Thus it was before the 1974 Penal Code was enacted, and thus it should remain absent some legislative action to the contrary.

**D. *Moore* and *Baker* Are the Sole Support for the Conclusion That a Felony Defined in the Election Code Cannot Be the Basis for a Conspiracy Offense under the Penal Code.**

Messieurs DeLay, Colyandro, and Ellis rely almost exclusively upon two 1976 and 1977 cases. These cases should be re-examined. In the first, *Moore v. State*,[32] Commissioner Davis stated that the specific offense of "criminal attempt" which is defined in section 15.01 of the Penal Code did not apply to the felony offense of obtaining a controlled substance by fraud which was defined in The Controlled Substances Act.[33] He recited Section 1.03(b) which stated that "the provisions of Titles 1, 2, and 3 of this code apply to offenses defined by other laws, unless the statute defining the offense provides otherwise[.]"[34] And he then reasoned, "The general attempt provisions of Sec. 15.01, supra, are contained in Title 4 of the Penal Code and thus Sec. 1.03(b), supra does not apply to Sec. 15.01, supra."[35] But this is a *non sequitur*. Why would any specific crime defined in the Penal Code (or the title in which it is defined) be mentioned in Section 1.03(b)? Only the general principles of criminal law are exported to extra-Penal Code offenses, not specific Penal Code crimes. None of the offenses defined in the Penal Code are mentioned in Section 1.03(b), but that does not mean that when they require the commission of "a felony" as a part of their definition, that felonies defined outside the Penal Code do not qualify as felonies for purposes of those Penal Code offenses. This was precisely the point made by Judge Douglas in his dissent in *Moore*. He stated that "Sec-

31. Judge Douglas set out a similar example of the absurdity of the logic in *Moore* which dealt with the offense of criminal attempt. He said:

There is no sound reason in policy or logic for the Legislature to intend to omit an attempted provision from the Controlled Substances Act. Such omission would lead to the absurd result that one could be prosecuted if a pharmacist gave him a prohibited substance in reliance on a forged prescription, but not if the pharmacist recognized and frustrated the criminal enterprise before it was completed. The Legislature could not have intended such a result.
545 S.W.2d at 143. Judge Douglas is absolutely correct.

32. 545 S.W.2d 140 (Tex.Crim.App.1976).

33. *Id.* at 141–42 (citing art. 4476–15, V.A.C.S., Sec. 4.09(a)(3)).

34. *Id.* at 142.

35. *Id.*

tion 15.01(a) is not limited to offenses defined in the code. It states that one must intend to commit 'an offense' to come within the ambit of the attempt provisions."[36] He noted the absurdity of the logic:

> It appears that the Legislature intended that an attempt to commit an offense involved in the Controlled Substance Act would not constitute an offense while attempts at all other crimes within the Penal Code would constitute offenses. Such a conclusion would contravene Section 1.05(a) of the Penal Code[.][37]

Judge Douglas stated that this Court should "effectuate the *full* legislative intent. We should find that the Penal Code and the Controlled Substances Act are complementary and have no difficulty in construing the statutes together. Accordingly, we should hold that the general attempt provisions set forth in Section 15.01, supra, apply to the Controlled Substances Act."[38] Alas, this Court approved Commissioner Davis's opinion rather than that of Judge Douglas.[39] And then the trouble snowballed. Six months later, Commissioner Davis addressed the applicability of the crime of conspiracy under Section 15.02 to the Controlled Substance Act. In *Baker v. State*,[40] Commissioner Davis noted that the defendant did not file any brief on appeal, but that he had, on his own, found "fundamental error which we must

review in the interest of justice."[41] Commissioner Davis posed the issue thus: "The question before us is whether the criminal conspiracy provisions of the new Texas Penal Code apply to the Controlled Substances Act. We hold they do not."[42] He posed the wrong issue. He should have posed it thus: "The question before us is whether a felony defined in the Controlled Substances Act qualifies as 'a felony' for purposes of the crime of conspiracy." The crime of conspiracy does not "apply" to other crimes, just as the crime of felony-murder does not "apply" to other crimes. But any felony crime, whether defined inside or outside of the Penal Code, may form the basis for the crime of conspiracy (or the crime of felony-murder, burglary, and so forth). Commissioner Davis was simply mistaken. He was thinking that attempts and conspiracy were general legal principles rather than specific penal offenses complete within themselves. It is no crime to be mistaken, but this Court, like Judge Douglas, should recognize that mistake. We now have the opportunity to correct it, and we should.

The Legislature obviously did not approve of Commissioner Davis's opinions in either *Moore* or *Baker*. It reacted by amending the Controlled Substances Act to explicitly provide that Title 4 of the Penal Code did apply to the Controlled

---

36. *Id.* at 143 (Douglas, J., dissenting).

37. *Id.* at 143–44. Section 1.05(a) provides:
   The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.
   TEX. PENAL CODE § 1.05(a).

38. *Id.* at 143. Unfortunately, Judge Douglas followed down Commissioner Davis's linguistic primrose path and mistakenly adopted his "apply to" language. He should have re-

phrased the issue first, and then he would have concluded: "Offenses defined in the Controlled Substances Act may form the basis of a criminal attempt prosecution under section 15.01 of the Penal Code."

39. *Id.* at 142.

40. 547 S.W.2d 627 (Tex.Crim.App.1977).

41. *Baker v. State*, 547 S.W.2d 627, 628 (Tex. Crim.App.1977).

42. *Id.*

Substances Act.[43] But it did so based on Commissioner Davis's faulty logic that attempts and conspiracy were general legal principles, like those principles set out in Titles 1, 2, and 3 of the Penal Code, rather than discrete criminal offenses. And down through the years it, like this Court, has perpetuated that original mistake of logic by enacting various piece-meal conspiracy provisions in some of the other Texas codes. And, by declining to accept the court of appeals's urgent invitation to revisit the mistaken logic in *Moore* and *Baker*, this Court further perpetuates that original mistake. Because this Court made the original mistake, we should repair it ourselves, not foist that responsibility off on the Legislature.

Unfortunately, we compound the original error by ignoring the explicit language of section 1.07(a)(23) that defines the phrase "a felony" for purposes of the Penal Code as "an offense so designated by law or punishable by death or confinement in a penitentiary." [44] Thus, even if the Legislature should take the hint and explicitly amend section 1.03(b) to state "The provisions of Titles 1, 2, and 3 of this Code *and the offenses defined in Title 4,* apply to offenses defined by other laws ...," we would still be left with the problem of having concluded that "a felony" for purposes of the Penal Code means only those felonies that are defined within the Penal Code.

Thus, one true legislative fix might be: "The provisions of Title 1, 2, and 3 of this Code *and the offenses defined in Titles 4–11,* apply to offenses defined by other laws

..." But this "fix" is illogical and may have unintended consequences of its own.[45] Another legislative fix might be to amend the definition of "felony" in Section 1.07(a)(23) to read: "'Felony' means an offense so designated by law or punishable by death or confinement in a penitentiary. It includes any felony defined in this code or any other Texas code, and it applies to all offenses defined in all titles within this code, including Title 4." If this seems redundant, it is, but it is necessary given our peculiar interpretation of the present definition.

The citizens of Texas would be well served if this Court admitted the mistake of logic in *Moore* and *Baker* and overturned them. Because the Court declines to do so, I respectfully dissent.

---

**43.** Tex.Rev.Civ. Stat. art. 4476–15, § 4.052 (added by Acts 1981, 67th Leg., ch. 268, § 2, eff. Sept. 1, 1981).

**44.** Tex. Penal Code § 1.07(a)(23).

**45.** A somewhat more felicitous phrasing might be: "All of the provisions of this Code

apply to offenses defined by other laws, unless the statute defining the offense provides otherwise...." But again, there might be numerous unintended and unforeseen consequences with a broad application of every provision of the Penal Code applying to every criminal offense defined in other Texas statutes.